Coddington v. Canaday.

---

CODDINGTON ET AL. *v.* CANADAY, RECEIVER.

[No. 18,721.   Filed October 10, 1901.]

COURTS. — *Jurisdiction.* — *Corporations.* — *Insolvency.*— *Receivers.*— Under §1366 Burns 1901 the circuit court has jurisdiction of an action by the receiver against the directors of an insolvent corporation for damages alleged to have been sustained by the corporation in consequence of the negligence of the directors. *pp. 251, 252.*

PLEADING.—*Jurisdiction of Court.*—An objection that a complaint, in an action by a receiver of an insolvent corporation against the directors for damages alleged to have been sustained by the corporation by reason of the negligence of the directors, fails to show any liability on the part of the directors which a receiver can enforce goes not to the jurisdiction of the court over the subject-matter of the action, but to the sufficiency of the facts stated. *p. 252.*

SAME.—*Demurrer.*—*Want of Legal Capacity to Sue.*—The want of legal capacity to sue, as a cause of demurrer under the statute, has reference to some legal disability of the plaintiff, not that the complaint upon its face fails to show a right of action in the plaintiff. *pp. 252, 253.*

RECEIVERS.—*Corporations.*—*Banks and Banking.*—A complaint in an action by the receiver of a bank against the directors for damages because of negligence in management showing that the bank was a bank of discount and deposit organized under the statutes of this State; that it became insolvent, and that the receiver was appointed by the court upon the application of the Auditor of State under §2938 Burns 1901, the order of court authorizing him to bring and prosecute in his own name as such receiver all actions necessary in

the discharge of his duties "whenever in the judgment of said receiver it would bé proper to bring and prosecute any such proceedings or suits," that such receiver accepted the appointment, gave bond, and took the oath prescribed by law is sufficient to show the title and power of such receiver to maintain the suit. *pp. 253, 254.*

PLEADING.—*Defect of Parties.—Demurrer.*—The question of defect of parties defendant is not presented by demurrer to a complaint in an action by the receiver of a bank against the directors where it was not disclosed by the complaint that there was a director not joined. *p. 254.*

SAME.—*Parties.—Banks and Banking.—Receivers.—Actions ex Delicto.*—In an action by the receiver of a bank against the directors for breach of trust, it is not necessary that all of the directors be joined as defendants. *p. 254.*

SAME.—*Misjoinder of Causes of Action.—Banks and Banking.—Receivers.*—A complaint by the receiver of a bank against the directors for damages for breach of trust does not contain a misjoinder of causes of action where the damages claimed are alleged to arise from breaches of trust and official duty on the part of the defendants, and all of the specifications of negligence and misconduct belong to a single class. *p. 255.*

SAME.—*Misjoinder of Causes of Action.—Harmless Error.*—Error in overruling a demurrer for a misjoinder of causes of action is harmless. *p. 255.*

RECEIVERS.—*Banks and Banking.—Action Against Directors.*—An action may be maintained by the receiver of a bank against the directors for gross negligence resulting in waste and loss of the capital, although there are no debts and the shareholders are the only persons to whom the damages recovered could be distributed. *pp. 255-257.*

PLEADING.—*Motions.—Demurrer.*—The objection that the charge of negligence in a complaint is too general to require an answer is not raised by demurrer for want of facts. Such defect must be pointed out by motion to make more specific. *p. 257.*

SAME.—*Banks and Banking.—Action by Receiver.*—A complaint by the receiver of a bank against the directors for damages resulting from negligence in management is not bad for want of an averment that the receiver and the parties represented by him were without fault, since if such fact was available by way of defense it should have been set up by answer. *p. 257.*

BANKS AND BANKING.—*Liability of Directors for Losses Occurring Through Their Negligence.*—Under the statutes of this State (§2921 *et seq.* Burns 1901), the directors of a bank are the agents of the corporation, having the general custody, control, and management of its property and affairs, and, while not responsible for mere errors

Coddington *v.* Canaday.

of judgment, they are responsible for losses and waste of money and property occurring through their gross inattention to the business of the bank or a wilful violation of duty.  *pp. 257-260.*

PLEADING.—*Motions to Strike Out.*—Available error cannot be predicated upon the action of the court in overruling a motion to strike out parts of the complaint.  *p. 260.*

SAME.—*Motion to Make More Specific.—Banks and Banking.—Receivers.*—A cause will not be reversed because of the action of the court in overruling a motion to make a complaint in an action by a receiver against the directors of a bank for damages resulting from negligent management more specific, where it appeared from the allegations of the complaint that plaintiff was unable to set out the facts more particularly for the reason that the books and records of the bank had been permitted by the defendants to be so imperfectly kept that the transactions complained of could not be more specifically described by the pleader.  *p. 261.*

BANKS AND BANKING.—*Capital Stock.—Payment.*—An answer in an action by the receiver of an insolvent bank against the directors for damages resulting from mismanagement and accepting worthless notes, judgments, and real estate in payment of capital stock, alleging that the acceptance of such notes, judgments and real estate was expressly authorized by the stockholders, presents no defense as against the claims of creditors.  *pp. 261-264.*

APPEAL AND ERROR.—*Motions.—Record.—Bill of Exceptions.*—Pleadings stricken out on motion, copied by the clerk but not brought into the record by bill of exceptions, are not a part of the record, and questions concerning the action of the court in striking them out cannot be considered on appeal.  *p. 264.*

From Delaware Circuit Court; *G. H. Koons,* Judge.

Action by Jesse Canaday as receiver of the Citizens Bank of Union City against Benjamin F. Coddington and others as directors for damages resulting from alleged negligence in the management of the affairs of the bank. From a judgment for plaintiff, Coddington and Smith, appeal. *Affirmed.*

*S. R. Bell* and *J. B. Ross,* for appellants.

*J. W. Thompson, J. W. Ryan* and *W. A. Thompson,* for appellee.

DOWLING, J.—This action was brought by the appellee, in his own name, as the receiver of the Citizens Bank of

Union City, Indiana, against the appellants, and others, who were the directors of that corporation. Its object was to recover damages alleged to have been sustained by the bank by reason of the negligence of the directors, and the gross mismanagement of the financial affairs of the corporation by them. The suit was commenced in the Randolph Circuit Court, the venue afterwards being changed to Delaware county. Motions were made by appellants to strike out parts of the complaint; to strike out the entire complaint; to separate it into paragraphs; to make it more certain; to strike out the 109th specification; and to make that specification more certain. Appellants Coddington and Smith each demurred to the complaint on the grounds that the court had not jurisdiction of the subject of the action, that the plaintiff had not the legal capacity to sue, that there was a defect of parties defendant, that there was a misjoinder of causes of action, and that the complaint did not state facts sufficient to constitute a cause of action. The demurrers were overruled. The appellant Coddington filed an answer in a single paragraph, to which a demurrer was sustained. He then answered in three paragraphs, the *first* of which was a general denial. The *second* and *third* paragraphs of this answer were stricken out on motion of the appellee. The appellant Smith filed his separate answer in five paragraphs, to the *first, second,* and *third* of which demurrers were sustained. The *fourth* paragraph was stricken out on motion of appellee. The *fifth* was a general denial of the matters stated in the complaint. The cause was tried by a jury, who returned a general verdict in favor of the appellee, assessing his damages at $50,000. With their verdict, the jury returned answers to nearly 1,000 questions of fact submitted to them by the parties. Motions for a new trial, and in arrest of judgment, filed by each appellant, were overruled, and judgment was rendered on the verdict. Coddington and Smith appeal, notice having been served upon their codefendants.

Errors are assigned by appellant Coddington as follows: "(1)   The complaint does not state facts sufficient to constitute a cause of action; (2) the court had not jurisdiction of the subject of the action; (3) the court erred in overruling the motion to strike out parts of the complaint; (4) the court erred in overruling the motion to strike out the entire complaint; (5) the court erred in overruling the motion to paragraph the complaint; (6) the court erred in overruling the motion to make the complaint more certain; (7) the court erred in overruling the demurrer to the complaint; (8) the court erred in overruling the motion to make the 109th specification of the complaint more certain; (9) the court erred in sustaining the demurrer to the answer; (10), (11), (12) the court erred in sustaining the motion to strike out the *second* and *third* paragraphs of appellant Coddington's answer; (13) the court erred in overruling the motion for a new trial; (14) the court erred in overruling the motion in arrest of judgment."

The errors assigned and discussed by appellant Smith are: "(1)   The complaint does not state facts sufficient to constitute a cause of action; (2) the court erred in overruling appellant's demurrer to the complaint; (3), (4), (5) the court erred in sustaining demurrers to the *first, second,* and *third* paragraphs of appellant's answer; (6) the court erred in striking out the *fourth* paragraph of appellant's answer."

The following is an abstract of the material parts of the complaint: It is alleged that on May 16, 1896, in a suit in the Randolph Circuit Court, in which the State of Indiana on the relation of the Auditor of State was the plaintiff, and the Citizens Bank was the defendant, the purpose of which was to have the said bank judicially declared insolvent, and to have its affairs placed in the hands of a receiver and wound up, the said appellee Jesse Canaday, was, by the order of the court, appointed such receiver to take charge of, and reduce to his possession, all of the property, rights,

credits, demands, and choses in action of every descrip-
tion, and however arising, belonging to said bank; that
the said Canaday as such receiver was, by the said order,
empowered and directed to bring and prosecute in his own
name, as such receiver, all actions necessary in the discharge
of his duties as receiver; that the said Canaday accepted
the said appointment, was duly qualified in the manner re-
quired by the statute, and entered upon, and is yet acting
in, the discharge of his said duties; that for twenty years a
bank of discount and deposit, known as "The Citizens
Bank," organized under the statutes of this State, having
a capital of $80,000, had been in existence and carrying on
business in Union City, Indiana; that said bank did a large
business in receiving deposits, and in buying and selling
notes, bills of exchange, and other commercial paper; that
said bank owned a large quantity of real estate; that on
March 27, 1893, the term of the corporate existence of said
bank expired, and that said bank then owned notes, bills,
and real estate; that on said 27th day of March, 1893, the
Citizens Bank was organized under the laws of this State as
a bank of discount and deposit, with a capital of $60,000,
divided into shares of $100 each, and that the said corpora-
tion became the successor of said original "Citizens Bank";
that by the action of the directors of both of said banks, the
notes, bills, commercial paper, and real estate of the old
bank were transferred and conveyed to the new bank; that
from March 27, 1893, until May 6, 1896, the said new bank
was actively engaged at Union City in receiving deposits,
loaning money, buying and discounting notes, bills, etc., and
in carrying on a general banking business; that on May 6,
1896, said bank closed its doors because of its insolvency;
that it had been insolvent for six months previously to said
date, and that it has done no business since May 6, 1896;
that the defendants were directors of said original "Citizens
Bank" for five years prior to April, 1893, and that, upon
the organization of the new bank, they were elected directors
of that corporation, and acted as such, being thereafter

annually reëlected to that position, and so continuing to act until said new bank ceased to do business; that during all of said time, from March 27, 1893, until May 6, 1896, each of said defendants and directors negligently and carelessly failed to perform his duties, and negligently and carelessly refused and neglected properly, prudently, and carefully to manage the business of the said new bank in this, to wit: The complaint here charges the defendants with some 109 specific breaches of duty. It alleges that they took the real estate held by the old bank at excessive estimates, and carried the same on the books, at such valuations, and in the published statements of the financial condition of the bank, thereby deceiving the public as to its solvency; that said directors took from said old bank $50,000 of worthless notes, drafts, checks, etc., at their face value, and carried the same on the books of the bank at such face value; that said directors failed to hold regular monthly meetings, but suffered the business of said bank to go by default, in consequence whereof said bank became hopelessly insolvent; that the said directors, at their first meeting, elected one Nathan Cadwalader president of said bank, and his son, Charles H. Cadwalader, cashier thereof, and thereafter kept both of them in said offices; that the said Nathan and Charles H. Cadwalader were engaged in other kinds of business, and were known to said directors to be unfit for said positions, the said Charles being a gambler and libertine; and that neither of said officers gave sufficient time to the business of the said bank, but that they neglected the same; that the said directors negligently failed to require any bond from either the said president or cashier, conditioned for the faithful performance of their duties, by means whereof large sums were lost to said bank; that said directors negligently failed to appoint a finance committee to examine the books of said bank, and to pass upon loans to be made by it, but that they permitted the president and cashier to make all such loans, and to carry on the business of the bank as they pleased, to the great injury of the bank; that large sums

were loaned and invested by these officers in, and upon, worthless paper, and to irresponsible persons, or without security, whereby the bank was subjected to great losses; that the said directors negligently permitted many depositors to overdraw their accounts; that they suffered the president to buy 100 shares of the capital stock of the bank at a premium of ten per centum, and to pay for the same out of the moneys of the bank; that the said directors negligently failed to examine the books of the bank, and to acquaint themselves with its business and condition, until it became hopelessly insolvent; that the said directors negligently permitted the president of the bank to purchase with the funds of the bank worthless stock of other corporations; that they negligently permitted the president of the said bank to appropriate to his own use $25,000 of the moneys of the said bank; that they negligently suffered the cashier to appropriate to his own use $25,000 of the moneys of the said bank; that they negligently permitted the president to make loans of large amounts on mortgages on real estate, which mortgages the president withheld from the records until other equities intervened, and they became worthless, whereby the loans were lost to the bank; that the said directors ordered the payment, semiannually, of dividends of five per centum from the time of the organization of the bank, on the whole of the capital stock, when the bank had made no profits out of which they could be paid, and when, in fact, the bank was paying interest on large sums of borrowed money; that the directors negligently permitted the president to sell, at a large discount, great quantities of the bank's funds and bills receivable, to wit, $50,000 worth; that said directors carelessly and negligently suffered and permitted the president of said bank, after it became insolvent, to transfer large amounts of its bills receivable, etc., to preferred creditors; to transfer worthless notes owned by him to the bank, and to take out their amount in money; to borrow for himself, and for corporations with which he was connected, $30,000, and to execute worthless paper for the

same; that the said directors carelessly and negligently permitted the said Charles H. Cadwalader to borrow for himself, and for firms and corporations in which he was interested, $40,000, either without security, or upon insufficient security, all of which remain unpaid, and that the notes given therefor are worthless; that said directors negligently permitted the president and his relatives to borrow from said bank, on worthless paper, $60,000. A great number of other similar charges of negligence and official misconduct, more or less specific, are contained in the complaint, but they need not be set out in this statement of the contents of that pleading.

The complaint also charges that the appellants failed to collect the subscriptions to the capital stock of said bank from many of its shareholders, although they were solvent; that they failed to require fifty per centum of the capital stock to be paid in before commencing business, and the whole to be paid in within six months thereafter, and that such capital has never been paid in; that the books of the bank were not properly kept in an intelligible manner, but contained false and fraudulent entries, which were intended to cheat and defraud.

As an excuse for the omission of dates, names and amounts, in many of the specifications of the misconduct of the directors, it is alleged that the plaintiff is unable to give a more definite statement of the transactions for the reason that the directors permitted the books of the bank to be so carelessly kept that these particulars are not shown, and cannot be ascertained.

The pleading concludes with the general charge that by reason of the negligent acts and conduct of the appellants, as therein set out, and their inattention to the business of the said bank, and the abandonment of the said business by them to the management of the president, Nathan Cadwalader, said bank has sustained a loss of $50,000, to the damage of the bank, etc.

The first question to be determined is that of the juris-

diction of the court over the subject of the action. Such subject was a claim against the directors of an insolvent corporation for damages alleged to have been sustained by the corporation in consequence of the negligence of the directors. There can be no doubt concerning the jurisdiction of the circuit court in a case of this kind. That jurisdiction is general, and embraces all actions for the recovery of damages resulting from neglect of official duty, misfeasance or malfeasance in office, or breach of trust. §1366 Burns 1901; *McCoy* v. *Able,* 131 Ind. 417, and cases cited.

The jurisdiction of the court over the subject of the action does not depend on the validity of the demand set forth in the complaint. Even if that pleading fails to show any liability whatever on the part of the directors which a receiver can enforce, the objection goes, not to the jurisdiction of the court over the subject of the action, but to the sufficiency of the facts stated.

The next point made is that the appellee had not the legal capacity to sue. This ground of demurrer under the statute means that the plaintiff is not entitled to sue by reason of some personal disability, or that he has no title to the character in which he sues. It is said in Story's Eq. Pl. (10th ed.), §494: "If an infant, or a married woman, or an idiot, or a lunatic, exhibiting a bill, appear upon the face of it to be thus incapable of instituting a suit alone, and no next friend or committee is named in the bill, the defendant may demur." An uncertificated bankrupt suing in equity for property which had clearly passed to his assignees, that fact appearing on the face of the bill, is cited as an example of an action by a person under a legal disability; and an administrator suing in virtue of the grant of administration in a foreign country, and an unincorporated company suing as a corporation, are mentioned as examples of actions in which there is a defect in the title of the plaintiff to the character in which he sues. This court has decided in many cases that the want of legal capacity to sue, which is

made a cause of demurrer, has reference to some legal disability of the plaintiff, such as infancy, idiocy, or coverture, and not to the fact, if such be the fact, that the complaint upon its face fails to show a right of action in the plaintiff. *Debolt* v. *Carter,* 31 Ind. 355, 363; *Dale* v. *Thomas,* 67 Ind. 570, 572; *Nave* v. *Hadley,* 74 Ind. 155, 156; *Dewey* v. *State, ex rel.,* 91 Ind. 173; *Traylor* v. *Dykins,* 91 Ind. 229; *Pence* v. *Aughe,* 101 Ind. 317; *Board, etc.,* v. *Kimberlin,* 108 Ind. 449; *Campbell* v. *Campbell,* 121 Ind. 178.

Is there here any defect of the title of the plaintiff to the character of receiver in which he sues? A receiver may be appointed when a corporation is insolvent, or is in imminent danger of insolvency. §1236 Burns 1901, spec. 5.

If a bank is in an insolvent or failing condition at the time the State Bank Examiner makes an examination, or, if between the periods of examination a bank fails or suspends, the Auditor of State is required to take charge of such bank, and of all the books, notes, cash on hand, and other assets. It is thereupon made the duty of the Auditor of State to apply to the circuit court of the county, where such bank is situated, for the appointment of a receiver for the bank. §2938 Burns Supp. 1897.

It appears from the complaint that the Citizens Bank was a bank of discount and deposit, organized under the statutes of this State; that it became insolvent; and that the Auditor of State, after taking charge of it, made an application to the judge of the Randolph Circuit Court by suit for the appointment of a receiver. It is further shown that the appellee was appointed such receiver; that he accepted the appointment, gave bond, and took the oath prescribed by law. By the terms of the statute, he was empowered, under the control of the court, or of the judge thereof in vacation, to bring and defend actions, to take and keep possession of the property, to receive rents, collect debts, in his own name, and, generally, to do such acts respecting the property as the court or judge might authorize. §1242 Burns 1901.

The order appointing the receiver for the Citizens Bank authorized him to take charge of, and reduce to his possession, all of the property, rights, credits, demands, and choses in action of every description, and however arising belonging to the bank. It empowered him to bring and prosecute in his own name, as such receiver, all actions necessary in the discharge of his duties, "whenever in the judgment of said receiver it would be proper to bring and prosecute any such proceedings or suits."

The statute of this State does not attempt precisely to define the powers of a receiver appointed by virtue of its provisions, but indicates, rather, their general scope and object. Among the ends to be attained by a general receivership are the seizure of property in the hands of the defendant, the recovery of such property as has been illegally transferred and for which a suit or action may be maintained, the collection of all claims in favor of the defendant, and, in the case of a corporation, the recovery of all such sums of money as may be due, owing or coming to the corporation upon any account whatever.

The allegations of the complaint sufficiently show that the plaintiff is under no personal disability, and that there is no defect in his title to the character in which he sues. Under the circumstances set forth in the pleading, the appointment of the receiver was authorized by the statute, and the terms of the order of the court were comprehensive enough to authorize him to prosecute the present action.

It is next objected that there is a defect of parties defendant, and that another director should have been joined. If there was another director, that fact is not disclosed by the complaint, and hence no question as to a defect of parties is presented by the demurrer. But, even if it appeared that there were other directors, it was not necessary that all should be sued. The action is not upon a contract, but is for a breach of trust, and arises *ex delicto*. *Brewer v. Boston Theater*, 104 Mass. 378, 399; *Franklin Ins. Co.* v. *Jenkins*,

3 Wend. 130; *Attorney-General* v. *Wilson,* 1 Cr. & Ph. (18 Eng. Ch.) 1; *Peck* v. *Ellis,* 2 John's Ch. (N. Y.) 131; *Heath* v. *Erie R. Co.,* 8 Blatch. (U. S.) 347, 395; *Cunningham* v. *Pell,* 5 Paige (N. Y.) 607; *Wilkinson* v. *Dodd,* 40 N. J. Eq. 123, 3 Atl. 360; Thompson's Liability of Officers, p. 353, note 3.

It is further contended that there is in the complaint a misjoinder of causes of action, and of parties. A misjoinder of causes of action is a joinder of causes belonging to different classes, such as contract and tort, a money demand on contract, and a claim to recover real property. §279 Burns 1901. We find no such defect in the complaint. The damages claimed are alleged to arise from breaches of trust and official duty on the part of the appellants, and all the specifications of negligence and misconduct belong to a single class. Besides, error in overruling a demurrer for a misjoinder of causes of action, even if such error existed, is immaterial. *Lane* v. *State,* 27 Ind. 108; *Cargar* v. *Fee,* 140 Ind. 572; §344 Burns 1901. Misjoinder of parties is not a ground of demurrer. §342 Burns 1901; *Cargar* v. *Fee,* 140 Ind. 572; *Armstrong* v. *Dunn,* 143 Ind. 433. There is, however, no misjoinder of parties in this case.

The *first* and *seventh* errors assigned by the appellant Coddington, and the *first* and *second* errors assigned by the appellant Smith, call in question the sufficiency of the facts stated in the complaint, and may be considered together.

The objections taken to the complaint by the appellants are (1) that it does not aver that the court authorized the receiver to bring the present suit; (2) that it does not allege that the assets of the bank in the hands of the receiver are insufficient to pay all lawful claims against the bank; (3) that the charges of negligence are too general to require an answer; (4) that the complaint does not allege that the receiver, and the parties represented by him, were without fault; and (5) that the appellants are not liable for the consequences of the acts and omissions of duty with which they are charged.

It has already been stated in this opinion that the order appointing the receiver sufficiently authorized him to bring this action. The right to maintain the suit does not depend upon the fact of the insufficiency of the assets in the hands of the receiver to pay all claims against the bank. If the property of the bank was lost or squandered by reason of the gross negligence of the directors, an injury was done to the corporation for which the directors are responsible to the bank, and an action for the damages resulting from such negligence may be maintained by the receiver, although the amount sought to be recovered may not be required to pay the debts of the bank. It will hardly be asserted that for such misconduct, resulting in the waste and loss of the capital of the corporation, the directors are not liable to some one, even where the shareholders are the only persons injuriously affected. But, it is held, that, under such circumstances, no action can be maintained at law by a stockholder. The injury is to the corporation, and not to the individual shareholder. In *Smith* v. *Hurd,* 12 Metc. 371, 46 Am. Dec. 690, it was said by Chief Justice Shaw: "But an injury done to the stock and capital, by negligence and misfeasance, is not an injury to such separate interest, but to the whole body of the stockholders in common. It is like the case of a common nuisance, where one who suffers a special damage, peculiar to himself, and distinguishable in kind from that which he shares in the common injury, may maintain a special action. Otherwise, he cannot. * * * But the true answer to the objection is, that stockholders have a remedy, a theoretic one indeed, and perhaps often inadequate, in the power of the corporation, in its corporate capacity, to obtain redress for injuries done to the common property, by the recovery of damages; and each individual stockholder has his remedy, through the powers thus vested in the corporation, for the common benefit."

It is not denied that the directors may be liable in an action by the receiver where there are debts owing by the

bank, and the assets in the hands of the receiver are insufficient to pay them. But, it is also clear, that an action may be maintained against the directors for gross negligence resulting in the waste and loss of the capital where there are no debts, and where the shareholders are the only persons to whom the damages recovered could be distributed. At law, the remedy must be enforced through the corporation itself, or by a receiver representing the common interest. In equity, the directors may be held liable as trustees for a fraudulent breach of trust even at the suit of an individual shareholder. *Hodges* v. *New England Screw Co.*, 1 R. I. 312, 53 Am. Dec. 624; *Hodges* v. *New England Screw Co.*, 3 R. I. 9. It was therefore unnecessary to aver that there were unpaid claims against the bank, and that the assets in the hands of the receiver were insufficient to pay them. However, if such an averment was necessary, the general allegation of the insolvency of the corporation covers the point.

The objection that the charges of negligence in the complaint were too general to require an answer cannot be allowed upon a demurrer for want of facts. The defect, if it existed, should have been pointed out by a motion to make the allegations more certain.

Neither was the complaint bad for want of an averment that the receiver and the parties represented by him were without fault. If the negligence of the directors was authorized, acquiesced in, or ratified by the corporation, and if such facts were available by way of defense, they should have been set up by answer.

Admitting the truth of all the charges of gross and inexcusable negligence, and the resulting waste and loss of the capital of the bank, as the appellants by their demurrer do, they contend that they cannot be held responsible for these consequences of their breach of duty and official delinquency.

It is true that the directors of a bank of discount and

deposit, incorporated under the statutes of this State, are not, at least in a technical sense, trustees, and it is said that they cannot be held to a very high degree of diligence in their management of the financial affairs of the bank. They usually serve without pay, and the general conduct of the business of the bank is necessarily entrusted, to a large extent, to the executive officers of the corporation. But, at the same time, the directors are, in a very emphatic sense, officers of the corporation. They have large powers, and important duties, which they can neither evade nor delegate. They are required to take an oath that they will faithfully and honestly discharge their duties as directors. They elect the president and cashier. They must exact from these officers separate bonds with surety, conditioned that they will faithfully and honestly discharge their several duties as such officers. They may make and establish from time to time such by-laws as may be deemed proper, not inconsistent with the banking act, for the regulation and transaction of the business of the bank, the holding of elections for directors, the manner in which stock shall be transferred on the books of the association, and the manner of appointing officers and agents thereof. They must meet, at least once a month, and must keep a record of their acts and proceedings. The general business of the association is under their management and control, and they must cause proper books to be kept of the transactions and business. They must set apart, and retain, ten per centum of the annual net profits of the business of the association as a surplus fund until the same amounts to twenty-five per centum of its capital stock. Neither the association, nor any member thereof, can, during its continuance in business, lawfully withdraw, or permit to be withdrawn any portion of its capital, either in the form of dividends, or otherwise. If losses have been sustained equal to, or exceeding, the undivided profits on hand, no dividend can be made. Nor can any dividend ever be made while such association continues

its banking operations greater than its net profits on hand, deducting therefrom its losses, and bad debts.    All debts due to the bank, on which interest is past due for six months, unless well secured, must be considered bad debts.

All transfers of notes, bonds, bills of exchange, and other evidences of debt owing to the association, or of deposits to its credit; all assignments of mortgages, securities on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable things to its use, or for the use of any of its shareholders or creditors; and all payments of money to either made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets to the proper payment of its just liabilities, or with a view to the preference of one creditor over another, are declared to be utterly null and void.    §§2922, 2923, 2924, 2925, 2927, 2928, 2929, 2934 Burns 1901.

The powers and duties of the appellants, as directors of the Citizens Bank, were thus clearly defined by the statute. These obligations were voluntarily assumed, and the appellants were bound to perform them.    Though they were important, their proper discharge did not require a large proportion of the time of the appellants, or any great degree of attention to the minor details of the business of the bank. It is certainly true that, if the appellants had performed those duties which the law expressly imposed upon them, the association could not have been subjected to the frauds, abuses, and losses which resulted in its insolvency.    The supervision of the directors over the business of the bank should have been such as would have enabled them at all times to know its general financial condition, and to check or prevent imprudent or dishonest conduct by the president or cashier.    They had the means of knowing, and they were bound to know, the amount and value of the paper and securities held by the bank.    They were also bound to know the character and habits of the men they had placed and

kept in charge of the bank as its president and cashier. There could be no excuse for their failure to examine the books of the bank, and for their ignorance of the manner in which its business was conducted. Under the statutes of this State, the directors of a bank are the agents of the corporation, having the general custody, control, and management of its property and affairs, and, as such agents, they are liable to account for all of the property of the corporation which has been entrusted to their control and management. For mere errors of judgment, they are not responsible; but for losses and waste of money and property, occurring through their gross inattention to the business of the bank or their wilful violation of their duties, they are liable. The claims of the corporation against the delinquent directors constitute a part of the property of the bank, and are to be treated as debts due to it. Their collection may be enforced by an assignee or receiver duly appointed, and authorized to sue for the sums due from such agents.

The complaint charges, in various forms, a violation of every duty which these appellants, as directors, had undertaken to perform. It shows that the loss and waste of the capital of the bank were the result of such gross negligence of the directors. When it is considered that all of the matters well pleaded in the complaint are admitted by the demurrer, it cannot be said that the facts stated in the pleading are not sufficient to constitute a cause of action in favor of the corporation, and of the receiver as the representative of the common interests.

Motions to strike out parts of the complaint on the ground that they were immaterial, irrelevant, improper and repetitions of other portions of the pleading were made by both appellants, and were overruled by the court. It is well settled that available error cannot be predicated of a ruling of the court refusing to sustain a motion of this kind. *Pfau* v. *State, ex rel.,* 148 Ind. 539; *Mabin* v. *Webster,* 129 Ind. 430, 28 Am. St. 199.

Coddington *v.* Canaday.

The court properly refused to strike out the entire complaint.

The motion of the appellants for an order requiring the appellee to state in separate paragraphs the several causes of action alleged to be set forth in the complaint was denied by the court. The complaint stated a single cause of action, which consisted of the grossly negligent management of the affairs of the bank by the directors, and their breach of their trust. The various specifications of misconduct were properly combined in a single paragraph.

The rulings of the court upon the motion to make the complaint more certain are next complained of by the appellants. It is true that many of the specifications of the negligence and misconduct of the directors were somewhat general in their averments. It appears, however, from other allegations of the complaint that the appellee was unable to set out the facts more particularly for the reason that the books of the bank, and the records of its business, had been permitted by the appellants to be so loosely and imperfectly kept that the transactions complained of, could not be more specifically described by the pleader. In view of the nature of the action, and of the difficulties created by the negligence of the appellants, we must hold that the motion to make the several specifications of the complaint more certain was properly overruled. Besides, it may be observed, that no injury to the appellants could have resulted from the ruling of the trial court for the reason that the directors had knowledge of the facts, and possessed the means of presenting them to the court or jury.

As a partial defense to so much of the complaint as charged the appellants with liability for accepting certain assets of the old bank in payment of stock subscriptions, the appellant Coddington first answered in a single paragraph setting up substantially that the new bank, with the consent of its stockholders, and acting upon reliable legal advice, accepted the real estate, notes, judgments, etc., of the old bank

in payment of the subscriptions of the stockholders of the new, and that in consideration of the transfer of this property the new bank agreed that it should be applied in discharge of all legal claims against the old bank; that this agreement and transfer were made before Coddington became a director of the new bank; that the new bank accepted said property and proceeded to use, collect, sell and convert it to its own use, and that the receiver has also sold some of said property, and is attempting to collect the notes, judgments, etc., and otherwise to dispose of, and to convert said property to the use of said new bank. The agreement of the stockholders was in writing, and a copy of it was made an exhibit. Upon demurrer, this answer was held insufficient.

Was the agreement which formed the basis of this defense one into which the new bank could lawfully enter? If not, did the retention and use of the property by the new bank, and its receiver, constitute a bar to an action by the receiver against the directors for negligence in accepting it in payment of subscriptions for the shares of the bank? Both questions must be answered in the negative. It may be suggested that strong reasons exist for holding that the acceptance of anything but money in payment of subscriptions to the capital stock of a banking association is illegal. No authority for such transactions is found in the statutes, and the nature of the business to be carried on seems to forbid them. The purchase of real estate by a banking association, except for use in its business, and under certain special circumstances, is expressly prohibited. §2932 Burns 1901.

Corporations, other than banking, may, perhaps, take property of certain kinds at a reasonable valuation, and under circumstances entirely free from fraud, in payment of such subscriptions, but banks stand upon a different footing, and the reasons which justify such dealings in the one case do not apply in the other. But, even if notes, bills, judgments, and the like, could be taken by the directors in pay-

ment of stock subscriptions, they could not lawfully be so taken unless there was reasonable ground for believing that they were good and collectible, and of the value at which they were to be received. If they were worthless, as charged in the complaint, it was the duty of the directors of the new bank to refuse to recognize them as payment for such stock subscriptions, and a failure to exercise ordinary care in accepting them in lieu of money was a breach of their duty as the agents of the corporation. Such a transaction was a deviation from the usual course of business, and it devolved on the appellants to show that the notes, bills, judgments, etc., so taken and recognized by them, were of the value at which they were transferred, or that they exercised ordinary care in ascertaining their value, and had reason to believe them to be worth the amounts for which they were taken. An agent, authorized to sell the property of his principal, or to collect debts due to him, is guilty of a gross breach of his duty, if, instead of obtaining money, he carelessly receives worthless paper or securities.

But, the appellants insist that the acceptance of the notes, bills, judgments and real estate by the directors of the new bank, in payment of stock subscriptions, was expressly authorized by the stockholders, and, therefore, the receiver, who represents the stockholders, is estopped from asserting any claim againts the directors on this account. If the stockholders alone were interested, the argument of the appellants on this question might deserve serious consideration. The complaint alleges that the corporation is insolvent. The receiver, therefore, represents the interests of the creditors of the bank, as well as those of its stockholders. As against the claims of creditors of an insolvent corporation, the directors cannot shield themselves from liability for gross mismanagement of its affairs by interposing a pretended authorization for their wrongdoing by the stockholders. The partial answer of appellant Coddington, founded upon the stockholders' agreement, did not state a valid defense

to that part of the complaint to which it was addressed, and there was no error in the action of the court in sustaining a demurrer to it.

The *first, second* and *third* paragraphs of appellant Smith's answer also set up the stockholders' agreement, and are substantially the same as Coddington's answer. For the reasons above given concerning the answers of the appellant Coddington, these paragraphs must be held insufficient.

The appellant Coddington filed three additional paragraphs of answer, the last being a denial, and appellant Smith filed two additional paragraphs, numbered *four* and *five,* the *fifth* being a denial. The *second* and *third* paragraphs of Coddington's answer, and the *fourth* paragraph of Smith's answer were stricken out on motion of the appellee. The pleadings so stricken out were copied by the clerk, but, as they have not been brought in by bill of exceptions, they are not a part of the record, and the question concerning the action of the court in striking them out cannot be considered.

The ruling of the court upon appellant's motion for a new trial is assailed upon the grounds (1), that the verdict is not sustained by sufficient evidence; (2), that the court erred in admitting certain evidence over the objections of appellants, and (3), that the court erred in giving, and in refusing to give, certain instructions.

The supposed deficiencies in the proof relate to the appointment of the appellee as receiver, and to the order of the court declaring his powers and duties; and also, to the amount of the damages assessed by the jury.

No attempt was made to bring the whole of the evidence into the record by a general bill of exceptions, but, by a special bill, it is claimed by the appellants, that all of the evidence relating to the appointment of a receiver, and to the term of service of the appellant Coddington as a director of the new bank, is brought before this court. Conceding, without deciding, that this evidence is legally in the record, it seems to be entirely sufficient to sustain the verdict in both

the particulars referred to. The order of the court appointing the receiver was regularly made, in a proper case, and it conferred on him authority to bring this suit. In regard to the objection that the assessment of damages against the appellant Coddington was excessive for the reason that he was not a director during the months of April and May, 1896, it is to be observed that the allegations of the complaint authorized the assessment of much more than $50,000 against him, and that, in the absence of the evidence upon these allegations, we cannot presume that the jury assessed any sum against him on account of proceedings which took place when he was not a director.

The objections to the introduction of the record evidence of the appointment of the receiver, and the subsequent proceedings of the court in connection therewith, were not well taken. The fact that the appellant Coddington was neither a stockholder nor a director of the bank when the application for the appointment of a receiver was made, did not render the record of such proceedings incompetent as evidence in an action against him. If he was, in fact, a stranger to that proceeding, he might, by a proper answer, have questioned the validity of the appointment, and the subsequent orders of the court. But, unless want of jurisdiction of the subject, or of the parties, was apparent, the entries of record in that suit were competent evidence of the appointment of the receiver, and of the order of the court authorizing him to sue in his own name for the debts and other property of the insolvent bank.

Objection was also made by the appellant Coddington to the introduction of certain entries in the books of the bank, the ground of such objection being that he was not a director at the times covered by such entries. These records were admitted in evidence because several defendants were before the court, and the evidence was competent as to some of them. There was no error in this. If the appellee failed to show that Coddington was a director at the dates

of the proceedings and transactions set out in the objectionable entries, then, at the conclusion of the evidence, the appellant should have asked for an instruction to the effect that as to him such entries were not to be considered.

The action of the court in giving, and in refusing to give, certain instructions is among the reasons assigned for a new trial, and it is insisted that there is error in this part of the proceedings. Among the instructions given at the request of the appellee, and excepted to by the appellants, was the following: "(7) The directors of a bank are conclusively presumed to know the business and financial condition of the bank. It is their duty to know whether it is solvent or not, and they cannot avoid responsibility on the ground of their ignorance of the bank's financial condition. They cannot be heard to say that they were not apprised of a fact, the existence of which is shown by the books, acts, and correspondence of the bank, and which would have come to their knowledge but for their neglect, or inattention to the business of the bank."

This instruction is in harmony with the views we have expressed in another part of this opinion, and, as we think, states the law correctly. It should be plainly understood by gentlemen occupying the position of directors of a bank that they are not mere lay figures, but that they have actual and responsible duties to perform, and that by gross inattention to these duties, resulting in the waste or loss of the capital of the bank, they render themselves liable to the corporation. A primary duty is that they should understand the financial condition of the bank. They owe this duty to the shareholders, depositors, and other creditors, and to the public. Ignorance of the important transactions of the corporation, and of the general state of its affairs, unless excusable for some special reason which it is incumbent on them to establish, constitutes no defense to an action for damages for losses occasioned by, or traceable to, their failure to perform their official obligations. It is expressly

declared by the statute that "the general business of the association is under their management and control, and they must cause proper books to be kept of the transactions and business." The instruction complained of is little more than a paraphrase of the governing statute, and it does not express any too forcibly the obligations and duties of those who voluntarily assume the position of directors of a bank. *State* v. *Cadwallader*, 154 Ind. 607.

None of the remaining instructions discussed by counsel for appellants is copied into the briefs, nor is there any statement of their substance as required by rule twenty-six. (Rules of 1889) of this court. Nevertheless, we have examined each of these instructions, separately, and also in connection with the entire charge given to the jury. We are satisfied that no error was committed by the court either in giving such as were objected to by appellants, or in refusing to give those asked for by them. The law governing the case was fairly stated in the charge; there was no misdirection of the jury; and the additional instructions asked for by the appellants were not consistent with the views expressed in this opinion.

Finding no error, the judgment is affirmed. Monks, C. J., did not participate in this decision.