Paul H. **BRANE**, Kenneth Richison, Ralph Dawes, John Thompson, et al., Appellants–Defendants,

v.

Porter E. **ROTH**, et al., Appellees–Plaintiffs.

No. 52A02–9102–CV–50 [1].

Court of Appeals of Indiana, First District.

April 20, 1992.

Rehearing Denied June 1, 1992.

---

1. This case was transferred to this office by order of the Chief Judge on February 28, 1992.

John F. Lyons, Anthony M. Stites, Ted S. Miller, Barrett & McNagny, Fort Wayne, for appellants-defendants.

Alan H. Lobley, Ice Miller Donadio & Ryan, Indianapolis, for appellees-plaintiffs.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Paul H. Brane, Kenneth Richison, Ralph Dawes, and John Thompson (collectively "directors") appeal the award of $424,-038.89 plus interest for Porter Roth, et al. (collectively "shareholders"), in an action against them as directors of the LaFontaine Grain Co-op ("Co-op"). We affirm.

## ISSUES

We restate the issues as:

1. Did the trial court err in denying the directors' motion for dismissal for lack of evidence pursuant to Ind. Trial Rule 41(B)?

2. Did the court apply an improper standard of care to the directors?

3. Did the court err in admitting Exhibits 25A and 25B into evidence?

4. Is the trial court's decision clearly erroneous?

5. Did the court erroneously fail to set-off the damages award by $150,000 from a settlement award recovered by Co-op?

6. Did the court err in awarding prejudgment interest?

## FACTS

This case involves a shareholders' action against the directors of a rural grain elevator cooperative for losses Co-op suffered in 1980 due to the directors' failure to protect its position by adequately hedging in the grain market. Paul Brane, Kenneth Richison, Ralph Dawes, and John Thompson were directors of Co-op in 1980. Eldon Richison was Co-op's manager that year who handled the buying and selling of grain. Approximately ninety percent of Co-op's business was buying and selling grain. The directors met on a monthly basis reviewing the manager's general report and financial reports prepared by Virginia Daihl, Co-op's bookkeeper. The directors also discussed maintenance and improvement matters and authorized loan transactions for Co-op. Requests for additional information on the reports were rare. The directors did not make any specific inquiry as to losses sustained in 1980.

The records show that Co-op's gross profit had fallen continually from 1977. After a substantial loss in 1979, Co-op's CPA, Michael Matchette, recommended that the directors hedge Co-op's grain position to protect itself from future losses. The directors authorized the manager to hedge for Co-op. Only a minimal amount was hedged, specifically $20,050 in hedging contracts were made, whereas Co-op had $7,300,000 in grain sales.

On February 3, 1981, Matchette presented the 1980 financial statement to the directors, indicating a net profit of only $68,-684. In 1982, Matchette informed the directors of errors in his 1980 financial statement and that Co-op had actually experienced a gross loss of $227,329. The 1982 restatement was admitted over objections as Exhibit 25A. The directors consulted another accounting firm to review the financial condition of Co-op. CPA Rex E. Coulter found additional errors in Matchette's 1980 financial statement, which increased the gross loss to $424,038. Coulter's recalculation was admitted over objections as Exhibit 25B. Coulter opined that the primary cause of the gross loss was the failure to hedge.

The court entered specific findings and conclusions determining that the directors breached their duties by retaining a manager inexperienced in hedging; failing to maintain reasonable supervision over him; and failing to attain knowledge of the basic fundamentals of hedging to be able to direct the hedging activities and supervise

the manager properly; and that their gross inattention and failure to protect the grain profits caused the resultant loss of $424,038.89. The court ordered prejudgment interest of 8% from December 31, 1980 to the judgment date.

## DISCUSSION AND DECISION

*Issue One*

■ Initially, the directors contend that the trial court erred in denying their motion for dismissal pursuant to T.R. 41(B). After the shareholders had completed their presentation of the evidence, the directors moved for a dismissal claiming that the shareholders had failed to present evidence that would entitle them to relief on their claim. The trial court denied the directors' motion to dismiss. In reviewing the denial of a motion for dismissal, we will not reverse the judgment unless it is clearly erroneous. *Benefit Trust Life Insurance Co. v. Waggoner* (1985), Ind.App., 473 N.E.2d 646, 648. We construe the trial court's findings liberally in support of the judgment and will find them clearly erroneous only when after reviewing the entire record, we are convinced that a mistake has been made. We examine the evidence favorable to the judgment and the reasonable inferences therefrom without reweighing the evidence. *Id.* We have reviewed the record and conclude that the trial court's denial of the T.R. 41(B) motion is not clearly erroneous.

*Issue Two*

The directors contend that the trial court applied the wrong standard of care to their actions. The trial court utilized the standard of care set forth in IND.CODE § 23-1-2-11.[2] In 1980, I.C. § 23-1-2-11 provided that a director shall perform his duties in good faith in the best interest of the corporation and with such care as an ordinarily prudent person in a like position would use in similar circumstances. The statute allows the director to rely upon information, reports, and opinions of the corporation's officers and employees which

he reasonably believes to be reliable and competent, and public accountants on matters which he reasonably believes to be within such person's professional competence. *Id.* A director has no liability if he meets this standard of care. *Id.*

I.C. § 23-1-2-11 was repealed and replaced by IND.CODE § 23-1-35-1, which preserved the former standard of care but narrowed liability by adding that a director is not liable unless he has breached or failed to perform his duties and such breach or failure to perform constitutes willful misconduct or recklessness. I.C. § 23-1-35-1(e); *see also* I.C. § 23-1-35-1(a) and (e) Official Comments. The directors assert that I.C. 23-1-35-1 should be applied retroactively to this case.

■ Generally, statutes are not given retroactive effect unless expressly stated by the legislature. *Indiana State Board of Dental Examiners v. Judd* (1990), Ind. App., 554 N.E.2d 829, 832. Even when amendments are remedial, retroactive application is disfavored when existing rights would be infringed. *Id.* Because I.C. § 23-1-35-1 narrows director liability, the statute affects existing rights shareholders had against directors. Therefore, we refuse to grant the directors' request to apply I.C. § 23-1-35-1 retroactively. We find that the trial court applied the correct standard of care upon the directors as established in I.C. § 23-1-2-11.

*Issue Three*

■ The directors argue that the trial court erred in admitting into evidence Exhibits 25A and 25B. Exhibit 25A is Matchette's figures reflecting Co-op's sales and costs for beans, corn, wheat, and oats for 1980 and 1981 after adjustments for errors. Exhibit 25B is a summary of Coulter's adjustments to Matchette's computation of Co-op's losses for 1980 and 1981. The directors contend that Exhibits 25A and 25B were hearsay and did not meet the business record exception because they were subsequently compiled solely for litigation. *See Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 222, *trans. denied* (report pre-

2. Repealed in 1986, now IND.CODE § 23-1-35-1.

pared specifically for litigation does not qualify under the business record exception). Another hearsay exception, past recollection recorded, is used when there is a summary of a mass of documentary evidence. *Crawford v. State* (1980), Ind.App., 401 N.E.2d 715, 717. A summary may be admitted where the books and records are in evidence, or in court, or available to the opposite party. *Id.*

■ Exhibit 25A is a summary with corrections of Matchette's working papers of his 1980 and 1981 audits based on Co-op's records. Also admitted into evidence at trial were Exhibits B and C. Exhibit B is Matchette's working papers of his 1980 audit of Co-op. Exhibit C consists of Matchette's working papers of his 1981 audit of Co-op. Because the underlying documents—Matchette's working papers—were admitted at trial and Co-op's records were available to the directors, Exhibit 25A was admissible under this exception.

■ Likewise, Exhibit 25B falls within the hearsay exception of past recollection recorded. Coulter testified that Exhibit 25B was based upon his examination of Co-op's records of transactions and liabilities in which he discovered additional losses that Matchette's audits had not calculated. Co-op's records were available to the directors. Although the directors further complain that Exhibits 25A and 25B do not comply with generally accepted accounting principles ("GAAP"), such deficiency goes to the weight of the evidence, not its admissibility. In fact, the court acknowledged in its finding no. 22 that the exhibits were not prepared in accordance with GAAP but stated that they were sufficient to determine the amount of damages. We do not find the court erred in admitting Exhibits 25A and 25B.

*Issue Four*

■ The directors allege in their statement of the issues that the court's findings were clearly erroneous. However, in their argument section, they fail to attack any specific findings entered by the court. The directors do refer to specific findings in their reply brief which they contend are erroneous. However, new arguments made in the reply brief are inappropriate and will not be considered on appeal. *Graham v. State* (1985), Ind.App., 480 N.E.2d 981, 988, *trans. denied, cert. denied,* 479 U.S. 1007, 107 S.Ct. 646, 93 L.Ed.2d 702 (1986).

■ The directors do argue in general that the trial court's decision is contrary to law because the shareholders failed to show proximate cause and specific damages. We remind them of the proper standard of review where the trial court made specific findings of fact and conclusions of law: we first must determine whether the evidence supports the findings, and then determine whether the findings support the judgment. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215. The judgment of the trial court will be affirmed if we conclude that the specific findings support the judgment and are not clearly erroneous. *ITT Industrial Credit Co. v. R.T.M. Development Co.* (1987), Ind.App., 512 N.E.2d 201, 203. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Bolde,* 530 N.E.2d at 1215.

Under this standard of review, we find that there was probative evidence that Co-op's losses were due to a failure to hedge. Coulter testified that grain elevators should engage in hedging to protect the co-op from losses from price swings. Record at 440. One expert in the grain elevator business and hedging testified that co-ops should not speculate and that Co-op's losses stemmed from the failure to hedge. Record at 504 and 511.

■ Further evidence in the record supports the court's findings and its conclusions that the directors breached their duty by their failure to supervise the manager and become aware of the essentials of hedging to be able to monitor the business which was a proximate cause of Co-op's losses. Although the directors argue that they relied upon their manager and should be insulated from liability, the business judgment rule protects directors from lia-

bility only if their decisions were informed ones. *See Hanson Trust PLC v. ML SCM Acquisitions, Inc.* (2d Cir.1986), 781 F.2d 264, 275 (director's decision must be an informed one); *Aronson v. Lewis* (1984), Del., 473 A.2d 805, 812 (business judgment rule is the presumption that directors acted on an informed basis, in good faith and in honest belief that the action taken was in the best interest of the company; the rule does not protect directors who have abdicated their functions or absent a conscious decision, failed to act; directors have a duty to inform themselves of all material information reasonably available to make their decision).

In *W & W Equipment Co. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *trans. denied*, we stated that "a director cannot blindly take action and later avoid the consequences by saying he was not aware of the effect of the action he took. A director has some duty to become informed about the actions he is about to undertake." *Id.* at 575 (citation omitted). Here, the evidence shows that the directors made no meaningful attempts to be informed of the hedging activities and their effects upon Co-op's financial position. Their failure to provide adequate supervision of the manager's actions was a breach of their duty of care to protect Co-op's interests in a reasonable manner. *See Tower Recreation, Inc. v. Beard* (1967), 141 Ind.App. 649, 651, 231 N.E.2d 154, 155, *trans. denied* (directors have a duty to reasonably protect the interests of the company). The business judgment rule does not shield the directors from liability.

The shareholders also presented evidence as to the amount of damages which resulted because of the directors' breaches in their duties to Co-op. The directors essentially request us to reweigh the evidence to arrive at a conclusion favorable to them. It is not our position to reweigh evidence. *ITT Industrial Credit Co.,* 512 N.E.2d at 203. We decline in light of our restrictive standard of review and find that the directors have failed to meet their burden on appeal of showing that the trial court's judgment is clearly erroneous.

We next address the directors' contentions that the conclusion nos. 4, 6, 7, and 8 are conflicting. In conclusion no. 4, the trial court noted the statutory standard of care in I.C. § 23-1-2-11. In conclusion no. 6, the court cited *Coddington v. Canaday* (1901), 157 Ind. 243, 61 N.E. 567, listing particular duties of directors. In *Coddington,* our supreme court held that directors are not liable for mere errors of judgment, but that they are liable for losses occurring through their gross inattention to the business or their willful violation of their duties. *Id.* at 260, 61 N.E. at 573. We perceive the directors' argument to be that the court erred in referring to both *Coddington* and I.C. § 23-1-2-11 because the *Coddington* language and the standard in I.C. § 23-1-2-11 are irreconcilable. We disagree.

The *Coddington* case points out particular duties which were breached by bank directors, such as the duties of: knowing the company's general financial condition, knowing its solvency position, checking or preventing improvident or dishonest conduct of managers, examining corporate records and knowing the manner in which business is conducted, and supervising managers. *Id.* at 259-60, 61 N.E. at 573. The trial court cited the duties in *Coddington* in its conclusion nos. 6-8, after commenting in conclusion no. 5 that I.C. § 23-1-2-11 is in harmony with and supported by *Coddington.* The court then proceeded in conclusion nos. 10 and 11 to list the duties which Co-op's directors had breached, which were similar to those listed in *Coddington,* and applied the I.C. § 23-1-2-11 standard of care. Record at 139-41.

In *Coddington,* the court determined the bank directors were grossly inattentive to the business and willfully violated their duties. The directors argue that this language requires "gross negligence" before liability is exacted. We disagree with the directors' interpretation and also note that as discussed in *Issue Two,* the proper standard of care is that set forth in I.C. § 23-1-2-11, which is not a gross negligence standard. The trial court's reference to *Coddington* reinforces the findings of the particular breaches of duties here and does not

imply that a finding of gross negligence by Co-op's directors was necessary. Furthermore, the reference to *Coddington* shows the trial court required more than errors in judgment before finding the directors were negligent. It was necessary that the trial court here decide whether the directors acted as ordinarily prudent persons in like positions in similar circumstances would have acted. The trial court applied that standard correctly. We do not find that the trial court's conclusions are conflicting.

*Issue Five*

Next, the directors argue that the trial court erroneously failed to set off the award to shareholders by a $150,000 settlement award. Co-op sued the accounting firm of Oyler & Matchette for the errors in the accounting reports for Co-op. Co-op recovered a $150,000 settlement award. The directors contend that the award was for the erroneous 1980 audit which reflected a profit instead of a loss. Therefore, they assert that the present damage award against the directors should be offset to prevent double recovery to Co-op. Conversely, the shareholders argue that the settlement was not for the 1980 loss, but was for the losses sustained in 1981 because they were not properly advised of the correct 1980 financial position. The errors in the 1980 audit did not cause the 1980 loss but affected the directors' actions in 1981 when they were under the erroneous impression that Co-op had profits in 1980.

Neither party points to evidence in the record to support their arguments regarding the settlement award. The directors do cite to the pretrial order in which the parties stipulated to the fact that a settlement agreement had been entered into between the Oyler & Matchette accounting firm and Co-op in 1986. *See* Record at 69. The pretrial order states that a copy of the settlement agreement is attached as an exhibit. However, no such exhibit is in the record. We have no way of knowing what period the settlement covered. The directors had the burden of demonstrating their position, and we will not sift through the record to locate evidence to support their case. We find this issue has been waived. *See Comfax Corp. v. North American Van Lines, Inc.* (1992), Ind.App., 587 N.E.2d 118, 121, n. 2.

*Issue Six*

Lastly, the directors argue that the award of prejudgment interest was inappropriate. In Indiana, the determination of whether prejudgment interest is allowable hinges upon whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. *Hammes v. Frank* (1991), Ind. App., 579 N.E.2d 1348, 1357, *trans. dismissed.* Prejudgment interest is proper only where a simple mathematical computation is required. *Id.* (quotation omitted). The loss was computed and shown by Exhibit 25B. Applying the standard, prejudgment interest was thus proper.

Affirmed.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result.