PEKIN INSURANCE COMPANY,
Defendant–Appellant,

v.

CHARLIE ROWE CHEVROLET, INC.,
Plaintiff–Appellee.

No. 75A03–8909–CV–376.

Court of Appeals of Indiana,
Third District.

July 25, 1990.

Donald K. Travis, Roy D. Burbrink, Stevens, Travis, Fortin, Lukenbill & Burbrink, Plymouth, for defendant-appellant.

Charles W. Weaver, Nichols, Wallsmith & Weaver, Knox, for plaintiff-appellee.

GARRARD, Judge.

Pekin Insurance Company (hereinafter Pekin) appeals the order of the Starke Circuit Court granting the motion of Charlie Rowe Chevrolet, Inc. (hereinafter Rowe) for summary judgment in an action for declaratory judgment. Pekin raises three issues which we combine and restate as follows:

1. Whether the trial court erred in granting Rowe's motion for summary judgment when it considered a supplemental affidavit that Pekin did not receive until one day after the hearing.

2. Whether the trial court erred in granting Rowe's motion for summary judgment.

We reverse.

### Facts and Procedural History

Rowe had for sale on its lot a used 1986 Chevrolet Camaro IROC–Z, and had a policy of insurance with Pekin, which included comprehensive coverage for theft. During January 1988, Timothy Nilsson agreed to purchase the car subject to his obtaining financing. Nilsson ultimately obtained a co-signer on a note with American State Bank. The bank had agreed to finance the purchase with a co-signer. The financial closing for the purchase, including the signing of the credit application, was scheduled on Monday, February 1, 1988. On Sunday, January 31, 1988, Rowe allowed Nilsson to drive the car to his home in

Illinois. That day, the car was stolen while in Nilsson's possession.

On July 15, 1988, Rowe filed a "Complaint for Declaratory Judgment" and asked the court to decide whether the car had been sold and delivered to Nilsson at the time of the theft and how much the car was worth. On November 23, 1988, Rowe moved for summary judgment on the first issue and included with his motion the affidavits of Nilsson and Charlie Rowe, the owner of the dealership. The trial court set the motion for hearing on December 22, 1988. On December 21, 1988, Rowe filed two additional affidavits. One of the affidavits, entitled "Supplemental Affidavit of Charlie Rowe," had been mailed to Pekin's counsel but counsel did not receive it until after the hearing on December 22. It is disputed whether Rowe mailed the affidavit in a timely manner.

Pekin objected to consideration of this affidavit. The trial court denied its objection but left the record open until January 26, 1989, for filing of responses. It granted the parties until February 2 to file additional briefs or legal authority. On March 30, 1989, the court granted Rowe's motion for summary judgment.

### Discussion and Decision

■ We initially note the procedural setting of this appeal. Rowe filed a complaint for declaratory judgment on July 15, 1988. In its complaint it asked the court to declare whether the car had been sold and delivered to Nilsson at the time of the theft, and it asked the court to determine the value of the car at the time of theft. Rowe then moved for summary judgment on the issue of sale and delivery, which motion the trial court granted. Pekin has appealed this order. Rowe has since moved for summary judgment on the other issue. The court rendered summary judgment on less than all the issues in the complaint. Summary judgment on less than all the issues in a claim is interlocutory unless the court determines otherwise and certifies the judgment for appeal. Indiana Rules of Procedure, Trial Rule 56(C); Appellate Rule 4(B)(6). The trial court has done neither.

■ This appeal, therefore, is from an interlocutory order and not a final judgment. The order would not normally be appealable until final judgment is rendered. However, the court of appeals may pass upon those adjudicated issues that are severable without prejudice to the parties. Appellate Rule 4(E). Thus, we will consider Pekin's claim that the trial court erred in granting partial summary judgment. *See Groen v. Elkins* (1990), Ind.App., 551 N.E.2d 876, 878, *transfer pending*.

Pekin contends first that the trial court erred by considering Rowe's supplemental affidavit at the hearing on summary judgment despite the fact that Pekin's counsel did not receive the affidavit until after the hearing. When Pekin became aware that the affidavit had been filed, Pekin objected and the trial court left the record open until January 26, 1989 to file responses and gave both parties until February 2, 1989 to file additional briefs and legal authorities.

■ The trial court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, further affidavits or testimony. TR 56(E). Thus, affidavits filed by the movant the day before trial to supplement the original, timely filed affidavits may properly be considered by the trial court. *Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 753. The fact that Pekin's counsel was unaware the supplemental affidavit had been filed until he received a copy after the hearing is not controlling. If it appears from the affidavits of the non-movant that he cannot present by affidavit facts essential to justify his opposition to summary judgment, the court may order a continuance to obtain affidavits or to gather other evidence. TR 56(F). The trial court may do this after hearing but before judgment. *Wisconics Engineering, supra.*

■ The trial court could consider the supplemental affidavit and could also allow the parties opposing summary judgment more time to gather additional evidence.

In the case at bar, it did both, and we are unable to say that in doing so it abused its discretion.

Pekin also contends that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether Pekin's insurance policy covered Rowe's loss. The insurance policy stated, in part:

> Exclusions. This insurance does not apply ... to loss occurring ... after delivery of any covered automobile sold by the named insured, whether or not subject to any security interest....

The facts show that closing was to occur on February 1, 1988, and was contingent upon Nilsson's obtaining financing. The financing was contingent upon Nilsson's obtaining a co-signer. Nevertheless, Nilsson was given possession of the car on January 31. Pekin argues that these facts lead to conflicting inferences, one of which is the inference that Nilsson had purchased the car which had been delivered.

Pekin bases his argument on IC 26–1–2–401(2) which provides, "Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place...." IC 26–1–2–401(2).

 The trial court concluded from the facts that the sale had not yet been concluded. The trial court supported its conclusion with *Jack Ward Chevrolet, Inc. v. Mikel* (1988), Ind.App., 525 N.E.2d 349. In that case, the buyer had discussed the purchase of a car with the dealer and had received loan approval. They discussed the need for automobile owner's insurance, and the salesman had permitted the buyer to drive the car to purchase insurance so that they could complete the transaction. The court of appeals found that because the purchase was not complete and the salesman had instructed the buyer to return the car to the dealership after she had purchased insurance, there was sufficient evidence to support the jury's finding that the

buyer was acting for the benefit and under the direction of the owner. *Id.* at 350. The purchase of the Camaro from Rowe was also not complete. We, nevertheless, cannot conclude from that fact alone that no delivery had taken place under the provisions of Indiana's commercial code.

 In reaching our conclusion, we first discuss the relationship between Indiana's title registration law and IC 26–1–2–401. IC 9–1–2–1 conditions the granting of a certificate of registration and registration plates upon the owner of the vehicle having or applying for a certificate of title for the motor vehicle. Certificate of title is not of itself proof of ownership or legal title to the vehicle. *Royal Indemnity Insurance Co. v. Shue* (1962), 134 Ind.App. 322, 327, 182 N.E.2d 796, 799; *Krietenstein v. Robinson* (1955), 126 Ind.App. 83, 88, 129 N.E.2d 368, 370. A person may have legal title in a vehicle even though he does not possess a certificate of title. Because failing to possess a certificate of title does not indicate absolutely that a person does not have legal title to an automobile, the determination of when a person has legal title is controlled by the application of the commercial code.

 Applying IC 26–1–2–401 to the case at bar, we cannot agree with the trial court that title had not passed to the buyer. Other jurisdictions applying the same provision to similar situations support our conclusion. In *Motors Insurance Co. v. Safeco Insurance Co. of America* (Ky.1967), 412 S.W.2d 584, the buyer and car dealer had agreed on a trade. The buyer turned his old car into the dealer, and the dealer gave him possession of the new car. All that remained to be done was for the title papers to be processed and for the buyer to return the next day with a check for the purchase price. That night, the buyer's son wrecked the car. The court found that under § 2–401, title had passed to the buyer. (Kentucky has since enacted a certificate of title law which has been held to govern motor vehicle sales. *Cowles v. Rogers* (Ky.App.1988), 762 S.W.2d 414.)

In *Metropolitan Auto Sales Corp. v. Koneski* (1969), 252 Md. 145, 249 A.2d 141, the buyer had agreed to buy the car in exchange for $795 and, subject to dealer's inspection, his old Ford. The buyer drove the dealer to his home for the inspection. They left the new car at the buyer's house, and the buyer drove the dealer in the old Ford back to the dealership. On the way, they had a wreck. They towed the old Ford back to the buyer's house and returned the new car to the dealership. The transaction was never concluded. A jury found against the dealership, and the trial judge denied the dealer's motion for judgment notwithstanding the verdict. The Maryland Court of Appeals affirmed and held that there was evidence from which a jury could have determined that the dealer was the owner of the old Ford.

Finally, in *DiRocco v. Michigan Mutual Insurance Co.* (E.D.Pa.1988), 692 F.Supp. 578, the buyer made a down payment on a truck and agreed to pay the balance due on delivery, which was to occur as soon as the seller completed modifications. The buyer advised the seller that when the modifications were finished, the truck should be taken to a company that would paint it in the colors of buyer's fleet. The court held that title to the truck had passed to the buyer and found that the record did not support a finding that the dealer and buyer had explicitly agreed that title would remain in the dealer until payment of the balance.

It appears beyond dispute that the car had been delivered to Nilsson prior to the occurrence of the theft. Neither the "Retail Order For A Motor Vehicle" signed by Nilsson and Rowe nor the retail installment sales contract contained any explicit agreement forestalling the passage of title, although the former asserts that it is "the entire agreement and no other agreement or understanding of any nature ... has been made ... or will be recognized."

To appreciate the UCC's assessment of these facts it is helpful to recall the admonition of White & Summers:

The code is not merely nontechnical, but it is anti-technical in its pervasive de-emphasis of the title concept in Article Two.

White & Summers, Uniform Commercial Code (2nd Ed.) § 4, p. 16. Thus, under IC 26-1-2-401 title passed to Nilsson with the delivery of the car. Similarly, IC 26-1-2-509(3) provides:

In any case not within subsection 1 [seller to ship goods by carrier] or (2) [goods held by bailee], the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant....

It follows that summary judgment was improperly granted in favor of Rowe. There is, at the least, a present failure of Rowe to show that no genuine issue exists concerning its reservation of title when the car was delivered to Nilsson.

Reversed and remanded.

HOFFMAN, P.J., and STATON, J., concur.