Hilton A. TURNER, Jr., Appellant–
Defendant,

v.

BOARD OF AVIATION COMMIS-
SIONERS, and City of Kokomo,
Indiana, Appellees–Plaintiffs.

No. 34A02–0004–CV–236.

Court of Appeals of Indiana.

Feb. 14, 2001.

Hilton A. Turner, Jr., Pro Se, Kokomo, IN, Attorney for Appellant.

Thomas J. Trauring, McGarvey Trauring & Wilson, Kokomo, IN, Attorney for Appellee.

**OPINION**

SHARPNACK, Chief Judge.

Hilton A. Turner, Jr., appeals the trial court's denial of his motion for summary judgment, the trial court's denial of his motion to dismiss, the trial court's grant of the Kokomo Board of Aviation Commissioners ("the Board") and the City of Kokomo's ("the City") motion to correct errors, and the trial court's award of attorney's fees to the Board.[1] He raises seven issues, which we consolidate and restate as:

1) whether the trial court erred when it denied Turner's motion for summary judgment;

2) whether the trial court abused its discretion in the course of ruling upon Turner's motion to compel joinder of third party plaintiffs;

3) whether the trial court abused its discretion when it refused to allow two of Turner's witnesses to testify at trial;

4) whether the trial court's denial of Turner's motion to dismiss is clearly erroneous; and

5) whether the trial court abused its discretion when it awarded attorney's fees to the Board.

In addition, the Board raises one issue, which we construe as a cross-appeal and restate as whether the trial court abused its discretion when it granted Turner's motion to accept a belated filing of materials designated in support of Turner's motion for summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

The relevant facts follow. The Kokomo Board of Aviation Commissioners owns and operates the Kokomo Municipal Airport. In 1993, the Board leased hangar space at the airport to Turner. On April 10, 1995, the Board adopted rewritten Air-

---

1. The City does not raise any arguments separately from the Board, so in our discussion we will address only the Board for simplicity.

port Rules and Regulations ("rules") and rewritten Minimum Standards and Requirements for the Aeronautical Use of the Kokomo Municipal Airport ("standards") (collectively, "rules and standards") to govern the airport.[2]

Sometime prior to June 1995, Ronald Gilbert, the airport manager, sent all hangar tenants a letter that designated an area of the airport for renters to "self-fuel" their aircraft.[3] The letter stated that as of June 1, 1995, self-fuelers could only use the designated area and would be fined for self-fueling their aircrafts elsewhere at the airport.

On May 11, 1996, Turner self-fueled his airplane outside of the designated self-fueling area. On May 13, 1996, Gilbert sent a letter to Turner warning him that he had violated airport regulations by self-fueling his aircraft outside of the designated area and informing him that this would be his only warning. In response, Turner sent a letter to the president of the Board in which he asserted that he believed he had acted in compliance with the rules and standards.

On June 1, 1996, Gilbert again saw Turner self-fuel his airplane outside of the designated area. Consequently, Gilbert issued a citation to Turner and fined him $100.00. On July 22, 1996, Frank Cade, a supervisor at the airport, saw Turner self-fuel his airplane outside of the designated area. Cade issued a citation to Turner and fined him $200.00.

After Turner did not pay the fines, the Board filed suit against Turner in small claims court on October 17, 1996, seeking payment of the $300.00 in fines. On December 19, 1996, the case was transferred to the plenary civil docket at Turner's request. On August 3, 1998, Turner filed a motion for summary judgment. After a

hearing, the trial court denied Turner's motion. Subsequently, pursuant to a motion by Turner, the trial court certified its summary judgment ruling for interlocutory appeal. Turner filed a petition for interlocutory appeal with this court, but this court denied the petition.

On February 11, 2000, the Board filed a motion for sanctions against Turner, alleging that Turner had unnecessarily prolonged the litigation by engaging in obdurate behavior and litigating in bad faith. While that motion was pending, a bench trial was held on February 15, 2000. After the Board ended its presentation of evidence, Turner moved to dismiss the suit, but the trial court denied the motion. After the trial, on March 28, 2000, the trial court entered a final judgment in which it found that the Board was entitled to judgment on both of the fines and ordered Turner to pay the Board $300.00.

On April 26, 2000, the trial court held a hearing upon the Board's motion for sanctions. Subsequently, the trial court granted the Board's motion and ordered Turner to pay $3,422.20 in attorney's fees to the Board.

## I.

▋ We choose to address the Board's cross-appeal issue before discussing Turner's summary judgment arguments because the cross-appeal issue, if meritorious, would be dispositive of Turner's summary judgment claims. The cross-appeal issue raised by the Board is whether the trial court abused its discretion when it granted Turner's motion to accept a belated filing of materials designated in support of Turner's motion for summary judgment.

---

**2.** The Airport Rules and Regulations and the Minimum Standards and Requirements for the Aeronautical Use of the Kokomo Municipal Airport are separate sets of rules, but they are equal in status and we will not separately identify them unless it is necessary for clarity.

**3.** At the Kokomo Airport, users apparently have a choice of either purchasing fuel from an aircraft refueling business or providing their own supply of fuel and self-fueling from that supply.

■ Indiana Trial Rule 56, the rule that governs summary judgment, provides that when a party files a motion for summary judgment, "[a]t *the time of filing the motion* ... a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." Ind. Trial Rule 56(C) (emphasis added). If a trial court finds good cause, it may alter any time limit set forth in Trial Rule 56. *See* Ind. T.R. 56(I). When the trial court permits materials relied upon in a summary judgment motion to be filed belatedly, we review the trial court's decision for an abuse of discretion. *See Indiana Univ. Med. Ctr. v. Logan,* 728 N.E.2d 855, 858 (Ind.2000). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* at 859.

In the instant case, Turner filed a motion for summary judgment and a brief in support of the motion on August 3, 1998. On· December 31, 1998, less than a week before the hearing on Turner's motion for summary judgment, Turner filed a designation of materials relied upon in support of his motion for summary judgment. A motion to accept the designation as a belated filing accompanied the designation, and in the motion Turner's counsel alleged that he had not timely filed the designation because he "injured his back approximately two weeks prior to Thanksgiving." Record, p. 676. The trial court granted Turner's motion to accept the belated filing. At the summary judgment hearing, the Board stated that "the sole purpose for [its] objection" to the belated filing was that it wanted an opportunity to address issues raised in Turner's designation. Record, p. 12. At the conclusion of the hearing, the trial court gave the Board two weeks to file a post-hearing ·brief in which it could address the issues raised by the designation of evidence.

Under Trial Rule 56(I), the trial court had the authority to extend the filing deadline for good cause shown. *See* Ind. T.R. 56(I). Furthermore, the trial court gave the Board ample opportunity to respond to the belated designation, which was the Board's only objection to Turner's belated filing. Therefore, the late filing did not prejudice the Board. Under these circumstances, we cannot say that the trial court abused its discretion when it granted Turner's motion to accept the belated filing. *See Pekin Ins. Co. v. Charlie Rowe Chevrolet, Inc.,* 556 N.E.2d 1367, 1369–1370 (Ind.Ct.App.1990) (determining that the trial court did not abuse its discretion when it considered belated affidavits in support of a motion for summary judgment because the trial court gave the non-movant extra time to respond to the affidavits).

## II.

The first issue raised by Turner is whether the trial court erred when it denied Turner's motion for summary judgment. Turner raises a number of challenges to the validity of the Board's rewritten rules and standards. We will address each in turn.

When we review·a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986); *see* Ind. T.R. 56. The appellant bears the burden of proving that the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmovant. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation

are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App. 1991). The party moving for summary judgment must shoulder the burden of establishing the lack of a material factual issue. *Estate of Taylor v. Muncie Med. Investors, L.P.,* 727 N.E.2d 466, 469 (Ind. Ct.App.2000). Once the movant has met this burden, the opposing party is obliged to present sufficient evidence to show the existence of a genuine triable issue. *Id.* The opposing party's obligation does not arise until after the movant has shown that he or she is entitled to summary judgment. *Id.*

## A.

■ Turner's first argument in regard to his summary judgment motion is that the Board lacked the authority to hire the attorney that rewrote the rules and standards in 1995, and because the hiring was illegal, the rules and standards are unenforceable. Specifically, Turner claims that the Board hired an outside attorney without the approval of the City of Kokomo's attorney, which Turner claims violates Indiana law. In support of his argument, Turner cites Ind.Code § 36–4–9–12, which provides, in relevant part:

The head of the department of law shall:

\* \* \* \* \*

(4) draft ordinances or other legal papers for the city and its departments, boards, commissions, and other agencies when requested by the proper officer; . . . .

\* \* \* \* \*

Officers, departments, boards, commissions, and other agencies of the city may not employ attorneys without the authorization of the head of the department of law.

Ind.Code § 36–4–9–12.

■ In this case, it is undisputed that the Board hired an outside attorney to rewrite the rules and standards without the permission of the city attorney. However, Ind.Code § 8–22–2–5 delineates the powers of local boards of aviation commissioners, and it specifically provides that a board of aviation commissioners may "employ . . . attorneys . . . ." Ind.Code § 8–22–2–5. When two statutes conflict, a statute dealing with a subject in a specific manner controls over a statute dealing with the same subject in general terms. *Isham v. Chaffee,* 572 N.E.2d 539, 540 (Ind.Ct.App. 1991). Because Ind.Code § 8–22–2–5 gives the Board specific independent authority to hire outside counsel, we conclude that it controls over the more general Ind. Code § 36–4–9–12, and the Board was not required to obtain the approval of the city attorney prior to hiring outside counsel. *See Vaughn v. King,* 167 F.3d 347, 351 & n. 3 (7th Cir.1999) (determining that a municipal sanitation board was not required to obtain the signature of the city attorney before hiring outside attorneys because the board had independent statutory authority to employ such attorneys). Consequently, Turner was not entitled to judgment as a matter of law, and the trial court did not err when it denied his motion for summary judgment on this point.

## B.

■ Next, Turner argues that when the Board adopted the rewritten rules and standards, it separately adopted a fine schedule for violations of the rules and standards at a secret meeting in violation of Indiana's open meeting law.[4] In support of his claim, Turner points to the minutes of the Board's meetings on April 10, 1995, when the Board adopted the rewritten rules and standards, and May 15,

---

4. The open meeting law, Ind.Code § 5–14– 1.5–3, provides, in relevant part, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them."

1995, when the Board adopted corrections to the rewritten rules and standards. The minutes from those meetings only refer to the rules and regulations in general terms and do not specifically discuss the schedule of fines and penalties. However, the revised rules and standards are approximately sixty-two pages in length, and they address a wide variety of important topics including fuel handling, emergency procedures, the airport traffic pattern, and flight training services, none of which are addressed in the meeting minutes. Thus, given the size of the rules and standards, it is neither unreasonable nor evidence of wrongdoing that the Board's minutes omit mention of the fine schedule or any other specific part of the rules and standards. Furthermore, Turner does not point to any evidence that the Board held a closed-door or secret meeting at which it approved the fine schedule. Because Turner bore the burden of rebutting the presumption that the rewritten rules and regulations are valid, and he has failed to provide any factual support for this claim, he was not entitled to summary judgment.[5] *See, e.g., Trisler v. Indiana Ins. Co.,* 575 N.E.2d 1021, 1025 (Ind.Ct.App.1991).

### C.

■ Turner next argues that he was entitled to summary judgment because the rewritten rules and standards were not published in their entirety. Specifically, he contends that the publication of the rules and standards omitted the schedule of fines, and that the failure to publish all of the rules and standards renders them invalid and unenforceable.

The parties agree that the published rewritten rules and standards omitted the precise dollar amount of fines that would be imposed for violating airport rules. However, the analysis does not end there. Ind.Code § 5–3–1–2.3 provides:

> A notice published in accordance with this chapter or any other Indiana statute is valid even though the notice contains errors or omissions, as long as:
>
> (1) a reasonable person would not be misled by the error or omission; and
>
> (2) the notice is in substantial compliance with the time and publication requirements applicable under this chapter or any other Indiana statute under which the notice is published.

Ind.Code § 5–3–1–2.3. Thus, we must determine whether the publication was proper despite the omission of the fine schedule. This is a question of first impression.

■ A review of our rules of statutory construction is necessary. Our objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent expressed in the statute. *Chavis v. Patton,* 683 N.E.2d 253, 257 (Ind.Ct.App.1997). Where, as here, a statute has not previously been construed, the express language of the statute and the rules of statutory construction control the interpretation. *Id.* We are required to determine and apply the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* In so doing, we consider the objects and purposes of the statute, as well

---

**5.** Turner also argues that two different versions of the rewritten rules and standards were admitted at the summary judgment hearing and at trial, which he claims is evidence that the Board passed some portions of the rules in secret and ex post facto. However, because the second version of the rules and standards was admitted at trial, not at the summary judgment stage, we may not consider it at this point. *See Holloway v. Bob Evans Farms, Inc.,* 695 N.E.2d 991, 994 (Ind.Ct.App. 1998) (providing that when reviewing the grant or denial of summary judgment, "we may only consider those parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and other matters which have been designated by the parties to the trial court for consideration"). In any case, Turner still provides no evidence that the Board met in secret to change the rewritten rules, and his failure to carry his burden of proof renders this claim without merit. *See, e.g., Trisler,* 575 N.E.2d at 1025.

as the effects and consequences of such interpretation. *Id.*

The first prong of the test set forth in Ind.Code § 5–3–1–2.3 is whether a reasonable person would be misled by the error or omission. *See* I.C. § 5–3–1–2.3. The statute does not define a "reasonable person." Undefined words in a statute are given their plain, ordinary and usual meaning. Ind.Code § 1–1–4–1(c). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Indiana Univ. Found.,* 647 N.E.2d 342, 348 (Ind.Ct.App.1995), *trans. denied.* Omitting tautological definitions, "reasonable" is defined, in relevant part, as "amenable to reason; just . . . using or showing reason or sound judgment; sensible . . . not extreme, immoderate, or excessive." Webster's New World Dictionary 1118 (3d college ed.1988). Furthermore, "mislead" is defined, in relevant part, as "to lead into error (of judgment); deceive or delude." *Id.* at 867.

In this case, the rewritten rules and standards imposed a fine not to exceed $100.00 for first-time offenders, imposed a fine not to exceed $200.00 for second-time offenders, and imposed a fine not to exceed $300.00 for third-time offenders. The published rules and standards omitted this fine schedule, however, and instead provided, in relevant part:

> The Board has adopted a schedule of Airport Rules and Regulations violations, penalties, and fines imposed. The Schedule of Violations and Penalties shall provide ascending penalties for [a] first offense, [a] second offense and [a] third time offense by an individual violator. A violator with three (3) successive offenses is declared to be a habitual offender of the Airport Rules and Regulations, and the Board may deny such person or persons use of the Airport, enforceable by appropriate civil actions in the local Courts.

Record, p. 475. We conclude that the omission of the exact fine amounts would not deceive a person of sound judgment as to the nature of the fine schedule. Although the precise amounts of the fines are omitted, the published rules and standards inform the reader that fines will be imposed in an ascending schedule and that three violations could cause the offender to be denied the use of the airport. We fail to see how the omission of the mere dollar amounts is misleading. Under these circumstances, we hold that the publication would not mislead a reasonable person. *See, e.g., Rush v. Elkhart County Plan Comm'n,* 698 N.E.2d 1211, 1216 (Ind.Ct. App.1998) (determining that a publication of a proposed zoning ordinance was not inadequate for omitting the use to which the rezoned land would be put because the publication gave individuals sufficient notice that land in which they had an interest may be affected by the proposed zoning ordinance), *trans. denied,* 706 N.E.2d 181.

The second prong of the statutory test is whether the publication substantially complies with the applicable time and publication requirements. *See* I.C. § 5–3–1–2.3. Here, Turner is not challenging the duration of the publication of the rules and standards or the forum in which they were published, and in the absence of a challenge on his part, we conclude that this prong of the statute has also been met. Therefore, despite the absence of the exact fine amounts, the publication complied with the requirements of Ind.Code § 5–3–1–2.3, and the rules and standards are not invalid for imperfect publication. *See, e.g., Rush,* 698 N.E.2d at 1216. Consequently, Turner was not entitled to summary judgment as a matter of law on this point.

### D.

Turner's next summary judgment claim is that Gilbert, the airport manager, lacked the authority to designate and enforce a self-fueling area. He claims that only the Board has the power to designate a self-fueling area because that is essentially a rulemaking function, which is reserved to the Board alone. Turner

cites Ind.Code § 8–22–2–5(b) for support, and that statute provides, in relevant part: "[t]he board, on behalf of the eligible entity, exclusively has the following powers: ... [t]o make rules and regulations, consistent with law, for the management and control of its airports, landing fields, air navigation facilities, and other property under its control." Ind.Code § 8–22–2–5. Assuming without deciding that the designation of a self-fueling area is a "rule or regulation" as used in Ind.Code § 8–22–2–5, a plain reading of the statute seems to require the Board's approval of all actions involving the management of the airport, including the designation of self-fueling areas. However, the Board responds that when Gilbert designated the self-fueling area, he was authorized by the Board do to so because he is the airport manager, and he was acting as the Board's agent. An agency relationship is one that results from a "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Lewis v. Davis*, 410 N.E.2d 1363, 1366 (Ind.Ct. App.1980) (quoting *Department of Treasury v. Ice Serv. Inc.*, 220 Ind. 64, 67–68, 41 N.E.2d 201, 203 (Ind.1942)). It arises from the consent of the parties in the form of a contractual agreement, but it is not necessary that the contract or the authority of the agent to act be in writing. *See id.* It is necessary that the agent be subject to the control of the principal with respect to the details of the work. *Id.*

Here, the Board cites to section III, subsection K of the standards, which provides, in part, "[a]irport users not operating under a lease contract with the airport to conduct refueling operations, shall refuel only in areas designated by the Board for that purpose." Record, p. 556. The Board argues that Gilbert, as the Board's employee and agent, could designate the self-fueling area, and, in the alternative, that even if Gilbert lacked explicit authority to designate the self-fueling area, the Board ratified his conduct by filing suit to collect the fines assessed against Turner

for self-fueling outside the designated area. In response, Turner points to the language of Ind.Code § 8–22–2–5(b), which provides that the Board "exclusively" has the right to make rules and regulations, but that provision does not directly address the Board's ability to delegate its powers to Gilbert. We hold that a material dispute of fact exists with regard to Gilbert's authority as airport manager to act as the Board's agent. Because Turner has not carried his burden of proving that there is no dispute of material fact and that he is entitled to judgment as a matter of law, he is not entitled to summary judgment, and we find no error on this point. *See, e.g., Trisler*, 575 N.E.2d at 1025.

### E.

Turner's final summary judgment claim is that he is entitled to summary judgment as a matter of law because he contends that Gilbert was required to seek the approval of the state fire prevention and building safety commission ("the commission") before designating a self-fueling area, and that his failure to do so renders the designation of the self-fueling area void.

The legislature created the commission and charged it with the duty of adopting a uniform, statewide code of fire safety laws and building laws. *See* Ind.Code §§ 22–12–2–1, 22–13–2–2. In doing so, the legislature also enacted two statutes that limited other political subdivisions' authority to pass such laws. *See* Ind.Code §§ 22–13–2–5, 22–13–2–3. Turner argues that according to both statutes, the approval of the commission was a prerequisite to designating a self-fueling area. We will address each statute in turn.

### 1.

The first statute, Ind.Code § 22–13–2–5, provides, in relevant part: "[a]n ordinance or other regulation adopted by a political subdivision that qualifies as a fire safety law or a building law is not effective until it is approved by the commission."

Turner claims that: 1) Gilbert's designation of a self-fueling area is a "fire safety law;" and 2) it was necessary for Gilbert to obtain the commission's approval of the self-fueling area prior to designating the self-fueling area, and his failure to do so renders the self-fueling area invalid.

■ In the instant case, assuming without deciding that the self-fueling area requirement is a "fire safety law" as con-templated by the statute, Turner, as the movant, bears the burden of proving that Gilbert and the Board failed to obtain the commission's approval. *See Trisler,* 575 N.E.2d at 1024. Until he meets the burden, the Board is under no obligation to set forth specific facts that demonstrate the existence of a dispute of material fact. *See id.* The only statement before the trial court on summary judgment regarding the commission's lack of approval was the argument of his counsel.[6] As we have previously noted, the "unsworn commentary of an attorney" is not competent evidence for a summary judgment motion and should not be considered. *See Freson v. Combs,* 433 N.E.2d 55, 59 (Ind.Ct.App. 1982). Consequently, because Turner failed to provide proper evidence to the trial court on this point, he has failed to carry his burden of demonstrating that there is no dispute of material fact. *See id.* (affirming the trial court's denial of a motion for summary judgment where the movants only submitted pleadings and unverified affidavits in support of the motion).

### 2.

■ The second statute that Turner cites, Ind.Code § 22–13–2–3, provides, in part: "[a] city, town, or county may adopt an ordinance that includes more stringent or detailed requirements that do not con-flict with the commission's rules, but the ordinance is subject to approval under section 5 of this chapter." Turner argues that the self-fueling area selected by Gilbert was a more stringent or detailed requirement than the requirement chosen by the commission and that, as a result, Gilbert and the Board should have sought the commission's approval.

Assuming without deciding that the selection of the self-fueling area was an adoption of an ordinance for the purposes of the statute, and assuming without deciding that the designation of the self-fueling area is a more detailed or stringent safety requirement than the commission's rules require, Turner once again bears the burden of proving that the commission did not approve the self-fueling area. *See Trisler,* 575 N.E.2d at 1024. Turner has cited to no evidence other than the arguments of his attorney to the trial court, which are not competent evidence for summary judgment purposes. *See Freson,* 433 N.E.2d at 59. Consequently, Turner has failed to carry his burden of proof on this point as well, and he is not entitled to summary judgment. *See id.*

■ In summary, Turner is not entitled to summary judgment because he has either not shown that there is no dispute of material fact or he has not shown that he is entitled to judgment as a matter of law. Consequently, the trial court did not err when it denied his summary judgment motion. *See Trisler,* 575 N.E.2d at 1025. However, several of his claims fail merely because he has not met his burden of showing that there is no dispute of material fact on those claims, not because they are without merit as a matter of law. *See supra* Parts II.B, II.D, and II.E. When a party moves for summary judgment but

**6.** Turner cites his pro se statement to the trial court at the hearing on the Board's motion for sanctions as additional evidence of Gilbert's failure to obtain the commission's approval. However, as we discussed earlier, when reviewing a summary judgment ruling we may only consider materials that were designated to the trial court at the summary judgment stage. *See Holloway,* 695 N.E.2d at 994. Because Turner's pro se statement was presented to the trial court after the trial court ruled upon Turner's summary judgment motion, we may not consider it at this point.

the motion is denied because the party did not demonstrate that there is no dispute of material fact, the issues raised in the motion are not eliminated; instead, the issues must be further adjudicated before the trial court. *See, e.g., Sam v. Wesley,* 647 N.E.2d 382, 386 (Ind.Ct.App.1995) (reversing the entry of summary judgment and remanding for further proceedings where the movant failed to sustain his burden of proof on several claims). In the instant case, the trial court specifically held that Turner could not re-raise his summary judgment claims at trial. Consequently, further proceedings on the remaining three claims are necessary, and we must vacate the trial court's entry of judgment. We will address the trial court's rulings on issues that are unrelated to the summary judgment motion and on other issues likely to be raised again on remand.[7]

### III.

■■■ The second issue raised by Turner is whether the trial court abused its discretion in the course of ruling upon Turner's motion to compel joinder of third party plaintiffs. On January 3, 2000, Turner filed a motion to compel joinder of plaintiffs.[8] Turner sought to join Gilbert and Cade, who are airport employees, as third-party plaintiffs. On February 8, 2000, after a hearing, the trial court granted Turner's motion to compel joinder but joined Gilbert and Cade to the suit as third party defendants rather than as plaintiffs. On February 11, 2000, the Board moved for dismissal or judgment on Turner's claims against Gilbert and Cade. On that same day, after a hearing, the trial court granted the motion. Turner contends that

when the trial court allowed Gilbert and Cade to be joined to the suit as third party defendants, the trial court implicitly denied his motion to join Gilbert and Cade as third party plaintiffs. Turner further contends that the trial court lacked jurisdiction to join Gilbert and Cade as third party defendants because he never filed a third party complaint. However, Turner does not cite to any cases or statutes in support of these contentions. Accordingly, they are waived for appellate review.[9] *See* Ind. Appellate Rule 8.3(A)(7); *Schaeffer v. Schaeffer,* 717 N.E.2d 915, 918 (Ind.Ct. App.1999).

### IV.

■■■■■■ The third issue raised by Turner is whether the trial court abused its discretion when it refused to allow two of Turner's witnesses to testify at trial. The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Faulkner v. Markkay of Ind., Inc.,* 663 N.E.2d 798, 800 (Ind.Ct. App.1996), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id.* Moreover, erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.; see also* Ind. Evidence Rule 103(a).

Here, Turner issued a subpoena duces tecum to Ken Ferries, who is the City's attorney, and a subpoena to Keith Pettigrew, the attorney who rewrote the Koko-

---

7. Because we are vacating the trial court's entry of judgment and remanding for further proceedings on the three remaining claims, we need not address Turner's arguments challenging the evidence supporting the trial court's judgment and the trial court's granting of the Board's motion to correct error.

8. This motion has not been included in the record.

9. Turner also argues that because he never filed a third party complaint, the trial court also lacked jurisdiction to rule upon the Board's motion for judgment and/or dismissal on his claims against the third party defendants. Once again, Turner has not cited any authority to support this contention, and the claim is waived. *See* App.R. 8.3(A)(7).

mo Airport's rules and standards.[10] The Board filed a motion to quash the Ferries subpoena, and a hearing was held on the motion. At the hearing, the Board argued that both subpoenas should be quashed, and the trial court agreed. Turner argues that because the trial court should have allowed him to re-raise his summary judgment claims at trial, it should have also allowed him to question Ferries and Pettigrew at trial. We disagree.

██ At the hearing, Turner told the trial court that he wanted to question Ferries and Pettigrew about the circumstances surrounding the hiring of Pettigrew to rewrite the airport rules and standards. Thus, their testimony would have been relevant to Turner's claim that the rewritten rules and standards were void because Pettigrew was hired without Ferries' permission. However, as we discussed above, that claim is without merit because the Board possessed independent statutory authority to hire outside attorneys. *See supra* Part II.A. Consequently, Turner could not have prevailed on that claim at trial even if Ferries and Pettigrew had testified. Because his claim was without merit, the trial court's exclusion of witnesses to testify about that claim is, at best, harmless error. *See Harlan Sprague Dawley, Inc. v. S.E. Lab Group, Inc.*, 644 N.E.2d 615, 622 (Ind.Ct. App.1994) (holding that the trial court's exclusion of evidence about a party's damages was, at best, harmless error because the party's method of calculating damages contravened Indiana law and was without merit), *reh'g denied, trans. denied.*

██ Turner also argued to the trial court that he wanted to question Ferries in connection with his claim that the Board's suit was frivolous. However, as we discuss below, his frivolousness claim is also without merit. *See infra* part VI. Because Turner is not entitled to relief on that claim, the exclusion of Ferries' testimony on that point was, at best, harmless error.[11] *See Harlan Sprague Dawley, Inc.*, 644 N.E.2d at 622.

## V.

The fourth issue raised by Turner is whether the trial court's denial of his motion to dismiss is clearly erroneous. In his motion and on appeal, Turner raises a number of challenges to the Board's authority under the rules and standards for fining him. We will address each in turn.

██ Motions for involuntary dismissal are governed by Indiana Trial Rule 41(B), which provides, in relevant part:

> After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Ind. Trial Rule 41(B). In reviewing the denial of a motion for dismissal, we will not reverse the judgment unless it is clearly erroneous. *Brane v. Roth*, 590 N.E.2d 587, 590 (Ind.Ct.App.1992), *reh'g denied, trans. denied.* We construe the trial court's findings liberally in support of the

10. Neither subpoena has been included in the record.

11. In his brief, Turner argues that he also wanted to ask Ferries why the citations he received stated that he had violated a certain provision in the rules and standards but the complaint filed against him by the Board accused him of violating a different provision of the rules and standards. However, our review of the record reveals that he did not raise this point to the trial court. Consequently, he has failed to preserve the issue for our review. *See Otto v. Park Garden Assoc.*, 612 N.E.2d 135, 139 (Ind.Ct.App.1993), *reh'g denied, trans. denied.*

judgment and will find them clearly erroneous only when after reviewing the entire record, we are convinced that a mistake has been made. *Id.* We examine the evidence favorable to the judgment and the reasonable inferences therefrom without reweighing the evidence. *Id.*

### A.

Turner first's claim from his motion to dismiss is that he did not violate the Board's rules by self-fueling outside of the self-fueling area because he had received written permission from the Board to do so. Specifically, he contends that his hangar lease, which incorporates the airport's rules and standards by reference, constitutes written permission from the Board to refuel his plane outside of the designated self-fueling area.

When the Board filed suit against Turner, it accused him of violating section 3(A)(3) of the airport's rules and standards. That section provides, in relevant part: "[n]o person shall engage in any aviation or aeronautical activity on the Airport without compliance with all Airport Minimum Standards and Requirements and first receiving written approval from the [Board]." Record, p. 505. Thus, the Board accused Turner of disregarding the requirement that he self-fuel only in the designated area unless he had the Board's written permission to self-fuel elsewhere.

■ Because the parties discuss different provisions of the rules and standards, a review of our rules of contract interpretation is necessary. When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Exide Corp. v. Millwright Riggers, Inc.,* 727 N.E.2d 473, 478 (Ind.Ct.App.2000), *trans. denied.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter

thereof, it is clear that some other meaning was intended. *Id.* at 478–479. Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* at 479. The entire contract must be read together and given meaning, if possible. *Id.* We must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed conflicting with, repugnant to, or neutralizing of any other provision. *Salcedo v. Toepp,* 696 N.E.2d 426, 436 (Ind.Ct. App.1998). When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Id.*

Here, Turner cites to section eight, subsection 14 ("subsection 14") of the rules, which states that public aircraft and parking areas may be used for the purpose of "servicing aircraft with fuel and lubricants," and argues that it provides written approval for his actions because he self-fueled his plane in one of those areas. Record, p. 516. Turner also cites section six, subsection five ("subsection 5"), of the rules, which provides "[a]ircraft fuel handling shall be conducted at least 25 feet from any hangar or other building." Record, p. 511. The Board disagrees with Turner's reading of the rules and standards and points to section III, subsection K ("subsection K") of the standards, which states, in relevant part, "[a]irport users not operating under a lease contract with the airport to conduct refueling operations, shall refuel only in areas designated by the Board for that purpose." Record, p. 556. We must determine whether these provisions conflict, and if they conflict we must apply our rules of contract interpretation to resolve the conflict.

■ Before we address those issues, Turner argues Section III, including subsection K, of the standards only applies to commercial operations, not personal aircraft owners such as himself, and consequently subsection K cannot support the Board's claim. We disagree. Section III begins with the following statement:

"[a]ny person, firm, or corporation engaging in any commercial aeronautical activity on the Kokomo Municipal Airport shall provide and maintain minimum facilities for the conduct, use and accommodation of its commercial or business operation, as set forth and provided for each classification of aeronautical activity hereinafter describes and as delineated."

Record, p. 536. However, despite this initial reference to commercial activity, Section III also contains extensive provisions regulating flying clubs, which are defined, in relevant part, as "any association or group of persons ... joining together in the ownership, lease or use of one or more aircraft, for their own individual use or pleasure...." Record, p. 534. In addition, subsection K of section III provides, in part, that it applies "to *all airport users* desiring to Self Fuel their *individually owned* Aircraft...." Record, p. 555. When we read the provisions of section III as a whole, as we are required to do, it appears that the drafter intended for portions of section III, including subsection K, to apply to personal aircraft as well as commercial operations. *See Exide Corp.*, 727 N.E.2d at 479 (noting that "[w]ords, phrases, sentences, paragraphs, and sections of a contract cannot be read alone"). Consequently, subsection K applies to Turner.

█ We first turn to subsection 5, which provides that "[a]ircraft fuel handling ... shall be conducted at least 25 feet from any hangar or other building." Record, p. 511. This subsection is a general safety provision. It does not provide that a person may self-fuel his aircraft anywhere in the airport so long as it is done more than twenty-five feet from any building, as Turner argues, and it does not preclude the Board from issuing stricter refueling standards. Thus, subsection 5 does not conflict with Subsection K, which provides that "[a]irport users not operating under a lease contract with the airport to conduct refueling operations, shall refu-

el only in areas designated by the Board for that purpose." Record, p. 556. There could be a conflict if the Board designated a refueling area that was closer than twenty-five feet from a building, but that issue is not presented here. Therefore, subsection 5 does not control over subsection K and it does not provide Turner with independent authorization to self-fuel his aircraft outside of the designated self-fueling area. *Cf. Discovery House, Inc. v. Metropolitan Bd. of Zoning Appeals*, 701 N.E.2d 577, 579 (Ind.Ct.App.1998) (determining that the plain language of a zoning ordinance authorized a party's proposed use of its property), *reh'g denied*, 701 N.E.2d 577, *trans. denied*, 714 N.E.2d 168.

█ Turning to subsection 14 of the rules, it states that public aircraft parking and storage areas may be used "for the purpose of parking and storing aircraft, for the purpose of servicing aircraft with fuel and lubricants and other supplies for use thereon, and for the purpose of making minor or emergency repairs to aircraft." Record, p. 516. According to its plain language, subsection 14 appears to authorize the refueling of aircraft in any public parking or storage area. Consequently, it conflicts with subsection K, which authorizes the Board to designate a specific area for aircraft refueling. When two provisions conflict, the more specific statute controls over the more general statute. *See, e.g., Salcedo*, 696 N.E.2d at 436. Here, subsection 14 is a general provision describing the different areas of the airport and the varied uses to which they may be put, which include the fueling of aircraft. In contrast, Subsection K specifically addresses only aircraft refueling and designates a specific refueling area. Therefore, we hold that the more specific provision regarding aircraft self-fueling, subsection K, should control here. *See, e.g., Salcedo*, 696 N.E.2d at 436. Furthermore, if we read subsection 14 as authorizing the self-fueling of aircraft in any aircraft parking or storage area, as Turner urges, then subsection 14 would invalidate

subsection K. Because we are compelled to interpret statutes in a harmonious manner if possible, subsection K must control over subsection 14. *See Salcedo*, 696 N.E.2d at 436. Consequently, subsection 14 does not provide Turner with permission to self-fuel his aircraft outside the designated area. In the absence of written permission to disregard the self-fueling area, Turner has failed to show that the Board and the City had no right to relief based upon the weight of the evidence and the law. Thus, the trial court's denial of Turner's motion to dismiss was not clearly erroneous on this point. *See Brane*, 590 N.E.2d at 590.

## B.

Turner next argues that he was entitled to dismissal of the Board's claims because the Board violated his due process rights. Specifically, he claims that when he was cited by Gilbert and Cade for self-fueling his plane outside of the designated self-fueling area, the citations both provided that he had violated subsection K and stated that he had a right to administrative review of the citations before the Board. He further argues that when the Board filed a complaint to collect the fines, it cited section 3(A)(3) of the rules and regulations as justification for its claim instead of subsection K. Turner concludes that before filing suit, the Board should have provided him with notice that section 3(A)(3) was also a basis for the citations and should have offered him an administrative hearing to challenge that basis.

Due process requires notice, an opportunity to be heard, and an opportunity to confront witnesses. *Carter v. Review Bd.*, 526 N.E.2d 717, 718 (Ind.Ct.App. 1988), *trans. denied.* Turner does not state whether he is seeking protection under the due process clause of the United States Constitution or the due process clause of the Indiana Constitution. Because Turner does not present a specific analysis pursuant to the Indiana Constitution, any state constitutional claim is waived and we must proceed under the United States Constitution. *See Valentin v. State*, 688 N.E.2d 412, 413 (Ind.1997). The due process clause of the Fourteenth Amendment to the United States Constitution provides, in part: "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law...."

Here, assuming without deciding that Turner should have received notice and a second hearing on the Board's new justification listed in its complaint, he has failed to allege or demonstrate that he was prejudiced by the lack of a hearing. He received a full and fair opportunity to refute the Board's claim in the proceedings before the trial court, and he litigated the applicability of section 3(A)(3) at length. In the absence of a showing of any resulting prejudice, we will not hold that Turner was denied due process. *See U.S. Outdoor Adver. Co., Inc. v. Indiana Dept. of Transp.*, 714 N.E.2d 1244, 1261 (Ind.Ct. App.1999) (holding that appellants' due process claim did not require reversal where they failed to show that they were prejudiced), *trans. denied*, 735 N.E.2d 221. Consequently, Turner failed to show that the Board has no right to relief according to the weight of the evidence and the law, and the trial court did not err when it denied his motion to dismiss on this issue.

## VI.

The fifth issue raised by Turner is whether the trial court abused its discretion when it awarded attorney's fees to the Board. Turner argues that the Board is not entitled to attorney's fees as a sanction because he did not litigate in bad faith or in an obstreperous manner. The Board asserts that the award of attorney's fees was proper because Turner litigated frivolous, unreasonable, and groundless claims in bad faith.[12]

---

12. The Board also cites the common law "obdurate behavior" doctrine to justify the award of attorney's fees. The obdurate behavior doctrine is inapplicable here because it may only be used to impose sanctions upon plaintiffs, not defendants such as Turner. *See Kik-*

■ Generally, litigants must pay their own attorney fees. *Kintzele v. Przybylinski*, 670 N.E.2d 101, 102 (Ind.Ct.App.1996). Thus, attorney fees are not allowable in the absence of a statute, agreement, or stipulation authorizing such an award. *United Farm Bureau Mut. Ins. Co. v. Ira*, 577 N.E.2d 588, 597 (Ind.Ct.App.1991), *trans. denied.* In Indiana, Ind.Code § 34–52–1–1 governs the award of attorney fees for litigating in bad faith or for pursuing frivolous claims.[13] Ind.Code § 34–52–1–1. It provides, in relevant part:

(a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Pursuant to this statute, a court may award attorney's fees upon a finding of any one of these elements. *Kintzele*, 670 N.E.2d at 102.

Because Ind.Code § 34–1–32–1 is identical to Ind.Code § 34–52–1–1, we conclude that the standard of review applicable to the former statute is also applicable to the latter. This standard involves several steps. "First, we review the trial court's findings of fact under the clearly erroneous standard and second, we review de novo the trial court's legal conclusions. Finally, we review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion standard." *St. Mary Med. Ctr. v. Baker*, 611

N.E.2d 135, 137 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* In examining the findings of fact we neither reweigh the evidence nor judge witness credibility; rather, we view only that evidence and the reasonable inferences to be drawn therefrom which support the trial court's findings and decision. *Kahn v. Cundiff*, 533 N.E.2d 164, 168 (Ind.Ct.App.1989), *aff'd*, 543 N.E.2d 627. In reviewing factual findings under the clearly erroneous standard we will not reverse unless we are left with a definite and firm conviction that a mistake has been made. *Id.*

In this case, the trial court ordered Turner to pay the Board $3,422.20 in attorney's fees without issuing findings of facts and conclusions thereon. In the absence of findings and conclusions, we will restrict our review to determining whether the trial court abused its discretion. *See Baker*, 611 N.E.2d at 137.

Turning first to Ind.Code § 34–52–1–1(b)(1) & (b)(2), we must determine whether Turner's defenses to the Board's claims were frivolous, unreasonable, or groundless, or whether he continued to litigate those defenses after they clearly became frivolous, unreasonable, or groundless. As we have previously said of these factors:

A claim is frivolous within the meaning of this section if (a) it is taken primarily for the purpose of harassing or maliciously injuring a person, (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) unable to support the action taken by a good faith and rational argument for an extension, modification or reversal of existing law. A claim or defense is unreasonable if based on the totality of the circumstances, including the law and facts known at the time of filing, no reasonable attorney would consider the claim or defense worthy of

---

kert v. *Krumm*, 474 N.E.2d 503, 505 (Ind. 1985).

**13.** The previous version of this statute, Ind. Code § 34–1–32–1, was in effect during part of this litigation. Ind.Code § 34–1–32–1 (repealed 1998). The two statutes are identical.

litigation or justified. A claim or defense is groundless within the meaning of this section if no facts exist which support the legal claim relied on and presented by the losing party.

*Ira,* 577 N.E.2d at 597.

Here, throughout this case Turner, either by counsel or pro se, has challenged the legitimacy of the Board's rewritten rules and standards, as well as the legitimacy of Gilbert's designation of a self-fueling area. At each stage, he has for the most part offered reasonable arguments and cited authority to support his contentions. Indeed, the trial court initially found in Turner's favor on the Board's $100.00 claim.[14] Although the trial court ultimately found all of Turner's claims to be without merit, and we have also rejected all of his claims other than those we have remanded for further proceedings, we cannot say that his defenses are unreasonable or so lacking in factual or authoritative support that they are frivolous, unreasonable, or groundless. *See Bagnall v. Town of Beverly Shores,* 726 N.E.2d 782, 787 (Ind.2000). Consequently, Ind.Code § 34–52–1–1(b)(1) & (b)(2) do not support the trial court's award of attorney fees to the Board. *See id.*

Turning to Ind.Code § 34–52–1–1(b)(3), we must determine whether Turner litigated in bad faith. We have previously defined bad faith as follows:

[T]he absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a

state of mind affirmatively operating with furtive design or ill will.

*Watson v. Thibodeau,* 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990) (quoting *Oxendine v. Public Service Co. of Indiana, Inc.,* 423 N.E.2d 612, 620 (Ind.Ct.App.1980)).

The Board cites the length of the litigation, Turner's numerous filings to the trial court, and Turner's simultaneous lawsuits before the trial court, the United States Court of Appeals for the Seventh Circuit, and the Federal Aviation Administration ("FAA") as proof of Turner's bad faith. We will address all three points.

First, while this lawsuit is over four years old, our review of the chronological case summary reveals that the Board as well as Turner moved several times to reset the trial or to reset pretrial conferences. Thus, Turner is not solely at fault for the case's age. More importantly, the Board points to no evidence that Turner's requests for continuances were motivated by ill will. Second, Turner filed many motions with the trial court, but the Board points to no evidence that Turner's numerous filings were intended to harass. Indeed, several of Turner's motions, if successful, were dispositive and could have greatly shortened the litigation. Third, although Turner did maintain actions before the FAA and United States Court of Appeals while this case was before the trial court, the Board again fails to point to any evidence of malicious intent on Turner's part. Turner has vigorously defended himself, perhaps more vigorously than the value of the Board's claims would seem to require, but there is simply no evidence of ill will on his part.[15] Consequently,

---

**14.** After initially finding in Turner's favor on the $100.00 claim, the trial court granted the Board's motion to correct error and entered judgment in favor of the Board on both of its claims.

**15.** The Board argues that Turner also exhibited bad faith in "his continual denial of allegations that he had refueled his aircraft outside the designated area (until the day of trial when Turner suddenly stipulated that he had

engaged in such conduct)." Appellees' Brief, p. 39. Our review of the record reveals that Turner never denied that he self-fueled his plane outside of the area designated by Gilbert. Instead, he consistently argued that the rules and standards authorized him to self-fuel his plane where he had done so. Consequently, Turner did not suddenly change positions at trial, and the Board's argument is without merit. Turner asserts that the Board's argument is a misrepresentation of

Ind.Code § 34–52–1–1(b)(3) also does not support the imposition of attorney's fees, and the trial court abused its discretion when it awarded attorney's fees to the Board.[16] *See Red Arrow Ventures, Ltd., v. Miller,* 692 N.E.2d 939, 947 (Ind.Ct.App. 1998) (*overruled in part on other grounds by Scott v. Randle,* 697 N.E.2d 60 (Ind.Ct. App.1998), *reh'g denied*), *trans. denied.* Therefore, we reverse the trial court's award of attorney's fees.

In conclusion, we affirm the trial court's denial of Turner's motion for summary judgment, but we vacate the trial court's judgment and remand for further proceedings on the remaining claims. Those claims are: 1) whether the Board violated Indiana's open meeting law in the course of adopting the rewritten rules and standards; 2) whether Gilbert had the authority to designate a self-fueling area; and 3) whether Gilbert was required to seek the approval of the state fire prevention and building safety commission before designating a self-fueling area and failed to do so. We also reverse the trial court's award of attorney's fees to the Board. In all other respects the judgment of the trial court is affirmed.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J. concurs.

BAKER, J. concurs and dissents with separate opinion.

BAKER, Judge, concurring and dissenting.

I fully concur with the majority's decision to reverse the award of attorney fees entered in the Board's favor. I cannot agree, however, with the vacation of the $300 judgment and the decision to remand this cause to the trial court for "further proceedings on [Turner's] remaining claims." Op. at 1172.

Citing *Trisler v. Indiana Ins. Co.,* 575 N.E.2d 1021, 1025 (Ind.Ct.App.1991), the majority concludes that the denial of Turner's motion for summary judgment was proper because he failed to establish that a genuine issue of material fact existed with respect to his claims that: 1) the Board acted improperly in holding an alleged "closed-door" meeting when approving the fine schedule; 2) Gilbert lacked authority as the Board's agent to designate a self-fueling area; and 3) Gilbert and the Board did not seek the approval of the building safety commission regarding a self-fueling area. Op. at 1160, 1161, 1163–1165.

At the time of trial, the judge informed the parties that he did not "intend to re-hash everything that we have already done on the Summary Judgment." Record at 146. The judge further commented that "the issue of whether or not the Board approved the fueling or anything that was raised in the Summary Judgment no, you can't raise it again. Now, when the case is over with, if you think I've made an error

the facts at issue and that by presenting this argument the Board's counsel has violated the Rules of Professional Conduct. It suffices to say that we do not view the Board's argument as an intentional misrepresentation of the facts designed to mislead us.

16. Turner argues that he is entitled to an award of trial attorney's fees and reimbursement of his own appellate costs because he claims that the Board's issues are frivolous and that the Board has engaged in obdurate behavior. However, this is not the proper forum in which to seek trial attorney's fees. If he prevails on any of the claims remaining to be adjudicated, he may request such fees from the trial court at that time. *See* I.C.

§ 34–52–1–1 (noting that a trial court "may award attorney's fees as part of the cost to the *prevailing* party. . . .") (emphasis added). As for his appellate costs, he is not entitled to such costs because he did not prevail on appeal. *See* Ind. Appellate Rule 15(H) (providing "when the judgment is reversed in whole the appellant shall recover costs . . ."). Furthermore, the obdurate behavior exception is inapplicable here because it is designed to "reimburse a *prevailing* party who has been dragged into baseless litigation and thereby subjected to great expense." *Kikkert,* 474 N.E.2d at 505 (emphasis added). In this case, Turner has not prevailed on any of his claims to date.

in my ruling, you are more than welcome to appeal it." R. at 147.

I can agree with the majority's view that Turner should have been afforded an opportunity at trial to proffer additional evidence regarding the merits of his claim, and that he was effectively precluded from doing so. However, Turner did nothing to establish that the trial court's exclusion of such purported evidence was improper. He did nothing to alert the trial court that he had any additional evidence to offer, which was separate and apart from that designated at the summary judgment proceedings. In other words, Turner has not demonstrated the substance, purpose, relevancy and materiality of excluded evidence that would enable us to determine on appeal whether the exclusion was proper. *See Donaldson v. Indianapolis Pub. Transp. Corp.*, 632 N.E.2d 1167, 1170 (Ind. Ct.App.1994). As a result, I vote to affirm the $300 judgment entered in the Board's favor.